**Salem**

IN RE WORRELL ENTERPRISES, INC.

No. 0745-92-3

Decided June 12, 1992

672

Counsel

John E. Falcone (Smith & Falcone, on brief), for petitioner.

Calvin F. Tiller, Assistant Attorney General (Mary Sue Terry, Attorney General; Gail Starling Marshall, Deputy Attorney General; William H. Hauser, Senior Assistant Attorney General, on brief), for respondent.

Opinion

**KOONTZ, C.J.**—This matter comes before the Court on petitioner's application for writ of mandamus, seeking access to medical, psychological and psychiatric documents subpoenaed by the Commonwealth, and sealed by the trial judge, in a criminal case styled *Commonwealth v. Lynn Hatcher Sanders*, that is presently pending in Amherst Circuit Court. Petitioner, Worrell Enterprises, Inc., which owns *The News and Advance* daily newspaper in Lynchburg (hereafter Worrell Enterprises), contends that the trial judge's closure order (1) abridges the freedom of the press in violation of the First Amendment to the United States Constitu-

tion and Article I, § 12 of the Virginia Constitution, and (2) violates the common law right of access to "judicial records." The dispositive issue in deciding whether petitioner is entitled to access to the documents depends upon whether the documents are "judicial records" or whether they are discovery materials. Because we find that all of the documents at issue are discovery materials, and not "judicial records," we deny petitioner's application for writ of mandamus.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lynn Hatcher Sanders is charged with first degree murder and arson in the killing of her eight-year-old son, Christopher Montgomery Sanders. The criminal case against Sanders is pending in Amherst County Circuit Court. On February 20, 1992, Sanders filed a Notice of Insanity Defense. By subpoena duces tecum filed February 21, 1992, the Commonwealth requested the production of psychiatric, psychological, medical, or other records of Sanders and her son.[1] Sanders filed a "Waiver of Public Trial and Motion To Seal Records," seeking to exclude the public and media from the courtroom during the trial, and further seeking closure of all medical, psychiatric and psychological documents subpoenaed by the Commonwealth.

A hearing on Sanders' motion was held on March 6, 1992 before the Honorable J. Michael Gamble.[2] Worrell Enterprises entered an appearance as intervenor for the purpose of objecting to Sanders' motion, and presented argument to the court. After hearing the arguments of counsel, Judge Gamble denied Sanders' request to close the trial, but granted the second part of her motion and sealed the documents that were subpoenaed by the Commonwealth.[3]

---

[1] The documents were obtained by the Commonwealth's attorney through seven subpoenae duces tecum, returnable to the clerk of the Amherst Juvenile and Domestic Relations Court and one subpoena returnable to the clerk of the Amherst County Circuit Court. All the documents are now locked in a file cabinet in the custody of the Amherst County Circuit Court clerk.

[2] This hearing was open to the public and press.

[3] Before Judge Gamble issued his order sealing the documents, the press had copied approximately one hundred pages of the nine hundred pages of materials at issue in this matter. Judge Gamble has not issued an order restricting the dissemination of the documents which are already in the possession of the press. We make no ruling respecting these documents because the issue is not before us.

Relying upon this Court's decision in *In re Times-World Corp.*, 7 Va. App. 317, 373 S.E.2d 474 (1988) (*Times-World*), Judge Gamble found that "private medical and psychological records have no tradition of openness in a criminal case" and that the information in these documents does not "[further] the functioning or purpose of a public trial." Based on his review of the documents in question, Judge Gamble stated that a substantial number of the documents were irrelevant to the case.[4] The judge further found that "[a]ny publication of these private [documents] prior to trial would possibly prevent [Sanders] from obtaining a fair trial in Amherst County." Thus, Judge Gamble concluded that "[Sanders'] right to a fair trial by an impartial jury outweighs the limited restriction on the public and news media to have access to historical medical and psychological records, a substantial portion of which are probably irrelevant and inadmissable in this proceeding."

On March 18, 1992, Worrell Enterprises filed a motion requesting the court to reconsider its order denying public access to the documents and also requesting the court to make specific findings in support of its March 6, 1992 ruling. By letter opinion dated March 26, 1992, Judge Gamble adhered to his March 6, 1992 order denying public access to the documents. Judge Gamble also indicated that he would "reconsider [the] order denying public and news media access to these records if [Sanders] elects not to proceed with a jury trial." Upon learning that Sanders had elected not to proceed with a jury trial,[5] Worrell Enterprises filed a Second Motion to Reconsider. By letter opinion dated May 22, 1992, Judge Gamble declined to reconsider the closure order because Sanders still had sufficient time to withdraw her waiver of jury trial.

On April 3, 1992, Worrell Enterprises, pursuant to Rule 5A:6, filed a timely notice of appeal in this Court of the trial judge's closure order. Thus, an application for writ of mandamus and an appeal challenging the same closure order are pending before this

---

[4] These documents total almost nine hundred pages. Upon reviewing the documents, Judge Gamble found that the materials concerned medical and psychological treatment rendered to Sanders since the early 1970s, treatment of the deceased child since birth, and psychological studies of Sanders and the deceased child conducted in the context of a custody proceeding.

[5] On May 20, 1992, Sanders was arraigned and waived her right to a jury trial.

Court in this matter. Apparently, a similar situation occurred in *Times-World*. Because duplicate proceedings are pending in this Court on the issue, and because the question of which proceeding is appropriate has arisen before, we address the question of whether mandamus or appeal is the proper avenue by which to challenge a trial court's closure order arising from a pending criminal trial.

Worrell Enterprises contends that the proper procedural approach in a public access case is an application for writ of mandamus. The Commonwealth, however, argues that mandamus is an extraordinary writ that will lie only where there is a clear and unequivocal duty imposed by law upon the public official to perform the act in question. *See Richlands Medical Assoc. v. Commonwealth ex rel. State Health Comm'n*, 230 Va. 384, 386, 337 S.E.2d 737, 739 (1985). The Commonwealth contends that because the decision to seal these documents rests with the discretion of the trial judge, and is not a clear duty imposed by law, mandamus is not available. *See Dovel v. Bertram*, 184 Va. 19, 22, 34 S.E.2d 369, 370 (1945).

While we agree that mandamus is an extraordinary writ and will lie only where there is a clear and unequivocal duty of a public official to perform the act in question, for the reasons implicit in *Times-World*, we believe mandamus rather than appeal is the proper means to challenge the closure order in a pending criminal trial. In *Times-World*, we recognized that appeal of a closure order in such a case generally would not permit the issue to be timely addressed by the appellate court because of the typically short duration of a trial, and, thus, the matter would evade review. *Times-World*, 7 Va. App. at 323-33, 373 S.E.2d at 477. Also, we noted that the issue of denial of public access is capable of repetition in other cases. *Id.* Similarly, the United States Fourth Circuit Court of Appeals has concluded that "[m]andamus, not appeal, 'is the preferred method of review for orders restricting press activity related to criminal proceedings.'" *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 63 (4th Cir. 1989) (quoting *In re Washington Post Co.*, 807 F.2d 383, 388 (4th Cir. 1986)). Accordingly, we hold that mandamus is the proper vehicle for challenging the trial court's closure order *arising from a pending criminal trial*. However, in light of the view that we take concerning the merits of the present application for writ of mandamus, we dismiss Worrell Enterprises' appeal.

## II. THE CONSTITUTIONAL RIGHT OF ACCESS ISSUE

■ Worrell Enterprises first contends that the press[6] has a constitutional right of access to the discovery documents subpoenaed by the Commonwealth.[7] The United States Supreme Court has held that there is a constitutional right of access to criminal trials. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). However, neither the United States Supreme Court nor the Virginia Supreme Court has decided whether the constitutional right of access extends to judicial records or documents, as well as to the trial of a criminal case.

■ We believe the proper test to be applied in determining whether there is a constitutional right of access to documents is the test applied by the United States Supreme Court where there has been a denial of access to criminal proceedings. The test for determining whether a constitutional right of access is available involves a two-part inquiry: (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question."[8] *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) (*Press-Enterprise II*). The lower federal courts have employed the analysis set forth in *Press-Enterprise II* in cases where there has been a denial of access to documents or papers, rather than to a particular aspect of the criminal proceeding. *See, e.g., Baltimore Sun Co.*, 886 F.2d at 64; *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 10 (1st Cir. 1986) (*Cryovac*).

---

[6] The courts usually do not distinguish between the press and the public regarding the right of access to criminal proceedings. In fact, the United States Supreme Court has recognized the media as "surrogates for the public." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980). Because the press and public generally enjoy the same right of access, *see id.*, we use the terms "press" and "public" interchangeably.

[7] Worrell Enterprises asserts that it has this constitutional right under the First Amendment of the United States Constitution and Article I, § 12 of the Virginia Constitution. These provisions are virtually identical. Thus, for purposes of this opinion only, we make no distinction between the United States Constitution and the Virginia Constitution in our analysis of the issue presented here.

[8] For a discussion of the origins and development of this test, see generally, *Times-World*, 7 Va. App. at 324-26, 373 S.E.2d at 477-79 (applying the test to determine whether the first amendment right of access to criminal trials extends to *voir dire* proceedings).

Before applying the *Press-Enterprise II* test, we note that some courts have held that a first amendment right of access extends to documents *filed* in a criminal proceeding. However, we decline to follow those decisions for several reasons. First, the documents at issue in this case were not *filed* with the court; rather, the documents were subpoenaed and made returnable to the court. See Rule 3A:12(b). Second, those courts holding that a first amendment right of access extends to documents filed in a criminal proceeding have usually limited their holdings to "documents submitted in connection with judicial proceedings that themselves implicate the right of access." *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987) (right of access extended to motions papers submitted by defendant to suppress evidence); *In re Washington Post Co.*, 807 F.2d 383, 388-90 (4th Cir. 1986) (right of access extended to criminal plea and sentencing hearing and documents submitted by parties in connection with those hearings); *In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984) (right of access extended to bail proceedings and evidence presented during bail proceeding). *See also Baltimore Sun Co.*, 886 F.2d at 64-65 (holding that because proceedings for the issuance of search warrants are not open to the public, there is no first amendment right of access to search warrant affidavits); *Cryovac*, 805 F.2d at 11-13 (holding that there is no constitutional or common law right of access to documents submitted to the court in a civil case for use in deciding discovery motions); *Associated Press v. United States Dist. Court*, 705 F.2d 1143, 1145 (9th Cir. 1983) (court saw no reason to distinguish between pretrial proceedings which that court had previously held are subject to first amendment access rights and "the documents filed in regard to them"). Because the documents at issue here were not *filed* with the trial court in connection with a proceeding to which the press has a recognized constitutional right of access, we find the cases cited by Worrell Enterprises unpersuasive. Consequently, we turn to the test adopted by the United States Supreme Court for evaluating a constitutional claim of right of access.

■ "In the first inquiry, the court asks whether the type of proceeding at issue has traditionally been conducted in an open fashion." *In re Washington Post Co.*, 807 F.2d at 389. Under the first prong of the test, it is clear that the "place and process" of discovery has historically not been open to the press and general public. In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984), the

Supreme Court recognized that civil discovery is not a public component of a civil trial. With regard to the "place" of discovery, the Court noted that "[d]iscovery rarely takes place in public." *Id.* at 33 n.19. Thus, the Court held that "restraints placed on discovered, but not yet admitted, information are not a restriction on a *traditionally* public source of information." *Id.* at 33 (emphasis added). Moreover, other courts have recognized that "discovery is fundamentally different from proceedings for which a public right of access has been recognized." *See, e.g., Cryovac,* 805 F.2d at 13 (holding that the discovery process has no tradition or history of public access and does not play a significant role in the administration of justice).

█ Although the decision in *Seattle Times Co.* addresses the right of access to civil, rather than criminal discovery materials, we find the Supreme Court's analysis equally instructive in the criminal context. *See In re Gannett News Serv., Inc.,* 772 F.2d 113, 116 (5th Cir. 1985) (noting that in a criminal case, "[t]he results of pretrial discovery may be restricted from the public"). While we recognize that there are some obvious differences between civil and criminal discovery, for purposes of our analysis of a constitutional right of access, they are the same. Discovery in a criminal case has traditionally been a private matter between the parties.

> Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private. Marcus, *Myth and Reality in Protective Order Litigation,* 69 Cornell L. Rev. 1, 15 (1983).

*United States v. Anderson,* 799 F.2d 1438, 1441, *reh'g denied, en banc,* 805 F.2d 1043 (11th Cir. 1986), *cert. denied,* 480 U.S. 931 (1987). Therefore, we find that the decision in *Seattle Times Co.* controls our resolution of this issue.

However, petitioner suggests that the discovery process is open to the press and public because a recent amendment of Rule 3A:12(b) now requires that documents obtained through subpoenas be returnable to the court or clerk of court. Pursuant to this recent amendment, petitioner contends that discovery documents

obtained pursuant to Rule 3A:12(b) are available for public inspection, apparently because the court has now been identified as the "place" of discovery. We disagree. Prior to the 1990 amendment, documents subpoenaed pursuant to Rule 3A:12(b) were not returnable to the court or clerk of court. The fact that a recent amendment makes discovery documents returnable to the clerk or court in no way demonstrates that there has been a history or tradition of openness in the discovery materials sought. In fact, to the contrary, petitioner's reference to Rule 3A:12(b) actually shows that discovery in criminal trials has historically been a private matter between the parties. In short, there is no tradition of openness to the "place or process" of discovery.

Under the second prong of the *Press-Enterprise II* test, we reach a similar conclusion. Worrell Enterprises asserts that access to "court records" is "important to a full understanding of the way in which 'the judicial process and the government as a whole' are functioning," *Associated Press*, 705 F.2d at 1145, and that access is essential to enable "the public to evaluate intelligently the performance of prosecutors and judges in controversial cases." *Globe Newspaper Co. v. Pokaski*, 684 F. Supp. 1132, 1135 (D. Mass. 1988) (holding that there is a constitutional right of access to *criminal records* of cases ending in acquittal, dismissal, nolle prosequi, or a finding of no probable cause), *modified by*, 868 F.2d 497 (1st Cir. 1989). Although Worrell Enterprises has broadly alleged that public access to "court records" plays a significant role in the administration of justice, it has failed to show that public access to *discovery materials*, of the type at issue here, serves such a role. In fact, the cases cited by Worrell Enterprises in support of its position involve access to documents *filed* with the court. Beyond mere generalized assertions, then, Worrell Enterprises has failed to show what *positive role* public access to these discovery materials plays in the functioning of the discovery process or the criminal trial.

The discovery documents to which the press seeks access are medical, psychological and psychiatric records of Sanders and her son. These documents, which have not been filed with the court or offered in evidence, will assist the parties in trial preparation. Specifically, the materials were subpoenaed by the Commonwealth following Sanders' Notice of Insanity Defense. In light of the nature and purpose of these documents, we fail to see how public

access will give the public a full understanding of the way the judicial process and the government are functioning or will assist the public in evaluating the performance of prosecutors and judges.

■ Indeed, several courts have recognized that public access to the discovery process may have a negative impact upon the administration of justice and the functioning of the system.

> The public's interest [in the discovery process] is in seeing that the process works and the parties are able to explore the issues fully without excessive waste or delay. But rather than facilitate an efficient and complete exploration of the facts and issues, a public right of access [to the discovery process] would unduly complicate the process.

*Cryovac*, 805 F.2d at 12. *See also Anderson*, 799 F.2d at 1441 (noting that if "discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe"). Simply stated, public access to the discovery process does not play a significant role in the administration of justice. *Cryovac*, 805 F.2d at 12. Accordingly, Worrell Enterprises' constitutional claim of access is without merit.

## III.   THE COMMON LAW RIGHT OF ACCESS ISSUE

Having found that there is no constitutional right of access to the discovery materials subpoenaed by the Commonwealth, we address Worrell Enterprises' contention that a right of access to these materials is rooted in the common law.

■ "The Supreme Court has recognized that the press and the public have a common law qualified right of access to judicial records." *Baltimore Sun Co.*, 886 F.2d at 65 (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-99 (1978)). "There is a long-standing presumption in the common law that the public may inspect judicial records." *Cryovac*, 805 F.2d at 13. However, the common law right of access to judicial records "does not encompass discovery materials." *Id.*

In *Shenandoah Publishing House, Inc. v. Fanning*, 235 Va. 253, 368 S.E.2d 253 (1988) (*Shenandoah*), the Virginia Supreme Court recognized a common law rule of openness in civil and

criminal proceedings. *Id.* at 258, 368 S.E.2d at 255 (citing Code § 17-43). Based on Code § 17-43[9] and its common law underpinnings, the Court held that there was "a rebuttable presumption of public access" to "judicial records." *Id.* at 258, 368 S.E.2d at 256. However, the Court was careful to distinguish "judicial records" from documents collected in discovery.

In *Shenandoah*, the trial court had sealed the entire court file after the parties had reached a compromise settlement. To facilitate its review of the closure order, the Supreme Court divided the data sealed by the trial court into two categories: "judicial records" and "pretrial documents." *Id.* at 256-57, 368 S.E.2d at 254. Included in the category "judicial records" were "the pleadings and any exhibits or motions filed by the parties and all orders entered by the trial court in the judicial proceedings leading to the judgment under review." *Id.* at 257, 368 S.E.2d at 255. The category of materials referred to as "pretrial documents" consisted of "all data assembled by the parties in the discovery process." *Id.* at 256-57, 368 S.E.2d at 255. Relying on *Seattle Times Co.*, the Court held that the "pretrial documents" were not subject to the common law right of access. *Id.* at 261, 368 S.E.2d at 257.

The pretrial discovery materials at issue in this case fall within that category of documents labeled "pretrial documents" in *Shenandoah*, which were held to be outside the scope of the common law right of access. The documents in question have not been offered into evidence. Thus, they are not "judicial records," as that term has been defined by the Virginia Supreme Court.[10]

Worrell Enterprises argues that a recent amendment to Rule 3A:12(b), making discovery documents collected by a subpoena duces tecum returnable to the clerk of the court or to the court,

---

[9]   Code § 17-43 provides:
   The records and papers of every court shall be open to inspection by any person and the clerk shall, when required, furnish copies thereof, except in cases in which it is otherwise specially provided.

[10]   Headnote 5 in the Virginia Reporter's printing of *Shenandoah* indicates that the term "judicial records" finds its meaning in Rule 5:10, which describes the contents of the record on appeal. 235 Va. at 254. Under Rule 5:10(a)(6), "any deposition and any discovery material encompassed within Part Four *offered in evidence* (*whether admitted or rejected*) at any proceeding" is part of the record on appeal. (emphasis added). The clear import of this provision is that discovery materials do not become "judicial records" until and unless offered into evidence. Consequently, the materials at issue here would not be "judicial records."

renders these discovery documents "judicial records."[11] We disagree. The fact that the Rule directs that the subpoena is returnable to the court or clerk does not change the character of the discovery documents. Because this rule, prior to the amendment, was silent as to where the materials should be delivered or the person to appear, the purpose of the amendment was to clarify where the documents are to be delivered or where the person identified must appear. Accordingly, we hold that the amendment does not change the character of these records from discovery material to "judicial records."[12]

The record shows that the documents are presently locked in a file cabinet in the office of the clerk of the court. Whether the documents are filed with or in the custody of the court is not dispositive as to whether they are "judicial records." *See United States v. Noriega*, 752 F. Supp. 1037, 1042 (S.D. Fla. 1990) ("whether the transcripts were formally entered on the docket or placed in the court file is not dispositive as to whether they are judicial records to which the press has a right of access"). The fact that the documents are in the custody of the court does not change the character of such materials as data that primarily facilitates trial preparation. *See Anderson*, 799 F.2d at 1441. Accordingly, we hold that these discovery documents, although subpoenaed and in the custody of the court, are not "judicial records."

If these documents are offered into evidence at trial, they will become part of the judicial record to which the press has been afforded a common law right of access pursuant to the holding in

---

[11] Rule 3A:12(b) provides:

(b) *For Production of Documentary Evidence and of Objects Before a Circuit Court.* - Upon notice to the adverse party and on affidavit by the party applying for the subpoena that the requested writings or objects are material to the proceedings and are in the possession of a person not a party to the action, the judge or the clerk may issue a subpoena duces tecum for the production of writings or objects described in the subpoena. Such subpoena shall command either (1) that the individual to whom it is addressed shall appear in person and with the items described either before the court or the clerk or (2) that such individual shall deliver the items described to the clerk. The subpoena may direct that the writing or object be produced at a time before the trial or before the time when it is to be offered in evidence.

[12] Although the Commonwealth points to various statutes concerning confidential records, we do not address the significance of these provisions because the thrust of Worrell Enterprises' argument concerns the amendment to Rule 3A:12(b).

*Shenandoah.*

## IV.  CONCLUSION

In summary, we hold that there is no constitutional right of access to the discovery documents subpoenaed by the Commonwealth. Moreover, we find that the common law right of access to "judicial records" does not extend to pretrial discovery materials collected by the parties but not yet a part of the judicial record in the proceedings. Accordingly, we deny the application for a writ of mandamus and dismiss the appeal which addresses the same issue.

*Denied and dismissed.*

Coleman, J., and Moon, J., concurred.