Present: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and
Kinser, JJ., and Compton, Senior Justice

HON. A. BURKE HERTZ, JUDGE DESIGNATE,
JUVENILE AND DOMESTIC RELATIONS
DISTRICT COURT OF THE COUNTY OF BEDFORD
                          OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.   Record No. 991282              April 21, 2000

TIMES-WORLD CORPORATION, ET AL.

         FROM THE CIRCUIT COURT OF BEDFORD COUNTY
              James W. Updike, Jr., Judge

HON. LESLIE L. MASON, JR.,
JUDGE DESIGNATE, JUVENILE AND
DOMESTIC RELATIONS DISTRICT COURT
OF THE COUNTY OF BRUNSWICK

v.   Record No. 992677

RICHMOND NEWSPAPERS, INC., ET AL.

        FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
               Robert G. O'Hara, Jr., Judge

                          I.

     In these consolidated appeals, we consider whether the

writ of mandamus is an appropriate remedy to challenge

juvenile and domestic relations district courts' rulings that

closed preliminary hearings to the public.

                          II.

         The Honorable A. Burke Hertz, Judge Designate,
               Juvenile and Domestic Relations
            District Court of the County of Bedford
                          v.
             Times-World Corporation, et al.

     In November 1998, the Honorable A. Burke Hertz, Judge

Designate of the Juvenile and Domestic Relations District

Court of the County of Bedford, conducted a joint preliminary hearing in the cases styled Commonwealth v. Randy Dwayne Ross and Commonwealth v. Keirsten Damea Davis. Ross, a juvenile, was charged with capital murder, and Davis, also a juvenile, was charged with first-degree murder. Both juveniles were also charged with certain related felonies.

Counsel for Ross, relying upon Code § 16.1-302[*], requested that the juvenile and domestic relations district court exclude the public and news media from the consolidated preliminary hearing. Counsel for Davis "joined" the motion. The Commonwealth's Attorney took no position on the closure motion. Counsel for the defendants had not given notice to the public or news media that they intended to make a closure motion, and no evidence was presented to support the motion. Counsel for Ross told the juvenile and domestic relations

---

[*] Code § 16.1-302(C) states in relevant part:

> "The general public shall be excluded from all juvenile court hearings and only such persons admitted as the judge shall deem proper. However, proceedings in cases involving an adult charged with a crime and hearings held on a petition or warrant alleging that a juvenile fourteen years of age or older committed an offense which would be a felony if committed by an adult shall be open. Subject to the provisions of subsection D for good cause shown, the court may, sua sponte or on motion of the accused or the attorney for the Commonwealth close the proceedings. If the proceedings are closed, the court shall state in writing its reasons and the

2

district court that a preliminary hearing open to the public "would [a]ffect quite seriously . . . potential jury selection in this case." Ross' counsel stated that a closed hearing was necessary because of the "violent nature" of the alleged crimes and the seriousness of the "potential punishment" that may be imposed upon his client. Ross' counsel also stated that photographs of his client in "protective gear" may affect the "potential selection of the jury process."

The juvenile and domestic relations district court granted the closure motion, stating:

> "Based on what counsel has represented based on Section 16.1-302, and the court is very sympathetic to the public interest that this matter has engendered, the public's right to know as much as possible about matters of this nature is most important, but this court believes that the rights of the defendant as expressed by counsel transcend the right of the public to know and therefore we will order at this time that the media be excluded and that the hearing be closed except to those subject to family members and relations and that sort of thing. I do not want to inhibit these defendants' rights in any way when it comes time for jury selection, they could be harmed very seriously in many ways as counsel has expressed. We do not want that to happen and in this court's opinion [that] transcends the rights of the public to be fully informed in this matter."

After the juvenile and domestic relations district court made its ruling, Terry Scanlon, a newspaper reporter for the Lynchburg News & Advance, informed the court that he had

---

statement shall be made a part of the public

3

forwarded a letter to court personnel requesting access to the hearing and that his request had not been denied. The juvenile and domestic relations district court responded that it had not been involved in this communication and the court would not change its ruling.

Shannon D. Harrington, a newspaper reporter for The Roanoke Times, identified himself to the juvenile and domestic relations district court and requested a continuance until counsel for his employer could appear to present "strong arguments" against closure. The juvenile and domestic relations district court rejected Harrington's request, ruling that it would not delay the hearing. During a recess, counsel for Harrington and The Roanoke Times contacted the juvenile and domestic relations district court by telephone and spoke with Judge Hertz. Counsel requested an opportunity to present legal argument against closure, but the court refused the request. Counsel did not, however, make a motion to intervene in the proceedings.

The juvenile and domestic relations district court entered a closure order in each juvenile defendant's case record. Each order stated that the preliminary hearing was closed to the public because of a "motion of defense counsel alleging jeopardy to client's right to a fair trial." Neither

record."

4

order recited any findings of fact by the juvenile and domestic relations district court.

Times-World Corporation, which publishes The Roanoke Times, Virginia Newspapers, Inc., which publishes the Lynchburg News & Advance, and Richmond Newspapers, Inc., which publishes the Richmond Times-Dispatch, along with each newspaper's respective reporter who attended the preliminary hearing, filed a "joint petition for the writ of mandamus" in the Circuit Court of Bedford County. These petitioners requested that the circuit court issue a writ of mandamus "compelling that [the juvenile and domestic relations district court's] ruling excluding the press be reversed and vacated as being violative of . . . Code § 16.1-302, the First Amendment of the United States Constitution, and Article I, Section 12, of the Virginia Constitution [, that the juvenile and domestic relations district court] be barred from excluding the press from any further proceedings in these matters; and [that] the transcript of the closed portion of the preliminary hearing be made public."

The Attorney General, on behalf of Judge Hertz, responded to the petition for writ of mandamus and asserted, among other things, that the petitioners may not vindicate their purported statutory and constitutional rights with a writ of mandamus and that the petitioners were required to file a motion to

intervene in the juvenile and domestic relations district court and assert whatever rights they might have in that forum. The circuit court disagreed and entered an order issuing the writ of mandamus.

The circuit court concluded that mandamus was an appropriate remedy and held, among other things, that the juvenile and domestic relations district court failed to comply with Code § 16.1-302(C). The circuit court also held that the "appropriate interpretation and application of [Code §] 16.1-302(C), and application of the correct standard pursuant to that statute, constitute ministerial duties and not discretionary acts." The circuit court's order required the filing of a transcript of the preliminary hearing in the public record of that court. Judge Hertz appeals.

III.

The Honorable Leslie L. Mason, Jr.,
Judge Designate, Juvenile and Domestic Relations
District Court of the County of Brunswick
v.
Richmond Newspapers, Inc., et al.

In May 1999, the Juvenile and Domestic Relations District Court of the County of Brunswick conducted a consolidated preliminary hearing in cases styled Commonwealth v. Mark Harvey and Commonwealth v. Michael Lee Knight. Harvey was the chief of police of the Town of Alberta, and Knight is an electrician. The defendants, both adults, had been charged

6

with multiple counts of aggravated sexual assault and sodomy upon numerous juveniles.

Before the hearing, Richmond Newspapers and its reporter, Jamie Ruff, filed a "motion for an open preliminary hearing." The Commonwealth's Attorney filed a motion for a closed hearing pursuant to Code § 18.2-67.8 which states:

> "In preliminary hearings for offenses charged under this article or under §§ 18.2-361, 18.2-366, 18.2-370 or § 18.2-370.1, the court may, on its own motion or at the request of the Commonwealth, the complaining witness, the accused, or their counsel, exclude from the courtroom all persons except officers of the court and persons whose presence, in the judgment of the court, would be supportive of the complaining witness or the accused and would not impair the conduct of a fair hearing."

The Commonwealth did not present any evidence in support of its motion. The Commonwealth's Attorney argued that the victims of the sexual crimes are between the ages of nine and seventeen, and their identities have been closely guarded. Counsel for Richmond Newspapers and Ruff contended that the preliminary hearing should be open to the public. The juvenile and domestic relations district court granted the motion to close the hearing. That court concluded that some of the witnesses were as young as five years of age and that the court was required to consider the interests of these children.

7

Richmond Newspapers and Ruff filed a petition for writ of mandamus against the Honorable Leslie L. Mason, Jr., Judge Designate, in the Circuit Court of Brunswick County. The petitioners alleged that the juvenile and domestic relations district court violated their rights guaranteed by the First Amendment to the United States Constitution and Art. I, Section 12, of the Constitution of Virginia. The Attorney General, on behalf of Judge Mason, filed responsive pleadings in the circuit court, including a motion to dismiss on the basis that mandamus was not an appropriate remedy.

The circuit court rejected the Attorney General's arguments and held that the juvenile and domestic relations district court violated the requirements of Code §§ 16.1-302(C) and 18.2-67.8, the First Amendment to the United States Constitution, and Art. I, Section 12, of the Constitution of Virginia. The circuit court granted the writ of mandamus and entered a final order that directed the juvenile and domestic relations district court "not to close [its] courtroom without making and articulating the findings required by law so that a reviewing court can determine that the closure was proper," and required that transcripts of the preliminary hearing be filed with the court and made a part of the public records in Commonwealth v. Mark Harvey and Commonwealth v. Michael Lee Knight. Judge Mason appeals.

IV.

Although the Attorney General, on behalf of Judges Hertz and Mason, raises a number of assignments of error, the dispositive issue in these appeals is whether the respective circuit courts erred in holding that mandamus was a proper remedy and in issuing the respective writs of mandamus. The Attorney General argues that the circuit courts erred in issuing the writs of mandamus because mandamus is not a remedy that can be used to challenge a judge's decision granting a motion to close a preliminary hearing in a juvenile and domestic relations district court. The newspapers and their reporters (collectively the newspapers) argue that the writ of mandamus is the appropriate remedy for challenging closure decisions.

Mandamus is an extraordinary remedy that may be used to compel a public official to perform a duty that is purely ministerial and is imposed upon the official by law. Earley v. Landsidle, 257 Va. 365, 369, 514 S.E.2d 153, 155 (1999); Town of Front Royal v. Front Royal and Warren County Industrial Park Corp., 248 Va. 581, 584, 449 S.E.2d 794, 796 (1994); Morrissette v. McGinniss, 246 Va. 378, 382, 436 S.E.2d 433, 435 (1993); Gannon v. State Corp. Commission, 243 Va. 480, 481-82, 416 S.E.2d 446, 447 (1992); Richlands Medical

Ass'n v. Commonwealth, 230 Va. 384, 386, 337 S.E.2d 737, 739 (1985).

This Court has recognized that a writ of mandamus is an extraordinary remedy and, for that reason, we have carefully scrutinized and imposed limitations upon the use of this remedy. We have consistently stated the following principles that are equally pertinent here:

> " 'A writ of mandamus is an extraordinary remedial process, which is not awarded as a matter of right but in the exercise of a sound judicial discretion. Due to the drastic character of the writ, the law has placed safeguards around it. Consideration should be had for the urgency which prompts an exercise of the discretion, the interests of the public and third persons, the results which would follow upon a refusal of the writ, as well as the promotion of substantial justice. In doubtful cases the writ will be denied, but where the right involved and the duty sought to be enforced are clear and certain and where there is no other available specific and adequate remedy the writ will issue.' "

Gannon, 243 Va. at 482, 416 S.E.2d at 447 (quoting Richmond-Greyhound Lines, Inc. v. Davis, 200 Va. 147, 151-52, 104 S.E.2d 813, 816 (1958)). Accord Williams v. Matthews, 248 Va. 277, 281, 448 S.E.2d 625, 627 (1994); Early Used Cars, Inc. v. Province, 218 Va. 605, 609, 239 S.E.2d 98, 101 (1977); Board of Supervisors v. Hylton Enterprises, Inc., 216 Va. 582, 584, 221 S.E.2d 534, 536 (1976); Richmond, Fredericksburg and Potomac, R.R. v. Fugate, 206 Va. 159, 162, 142 S.E.2d 546, 548 (1965).

10

The requirement that a litigant who seeks the issuance of a writ of mandamus must have no adequate remedy at law is deeply imbedded in the jurisprudence of this Commonwealth. For example, we stated in Parker v. Anderson, 2 Patton & Heath 38, 41 (Va. 1856), that "[a] writ of mandamus lies in consequence of the violation of some legal right or duty imposed by law, and for which no adequate remedy has been provided." We restated this principle in Tyler v. Taylor, 70 Va. (29 Gratt.) 765, 766-67 (1878):

> "The writ of mandamus, known in England as a high prerogative writ, is justly regarded in this country as one of the highest writs known to our system of jurisprudence; and it only issues when there is a clear and specific legal right to be enforced, or a duty which ought to be and can be performed, and where there is no other specific and adequate legal remedy. The right which it is sought to protect must therefore be clearly established, and the writ is never granted in doubtful cases."

Accord Milliner's Adm'r v. Harrison, 73 Va. (32 Gratt.) 422, 426 (1879). We repeated this elemental principle in Hall v. Stuart, 198 Va. 315, 324, 94 S.E.2d 284, 290 (1956):

> "One of the fundamental principles underlying the entire jurisdiction is that mandamus never lies where the party aggrieved has another adequate remedy at law, by action or otherwise . . . ."

We applied this principle recently in Gannon v. State Corp. Commission, supra. Stephen T. Gannon invoked this Court's original jurisdiction and sought a writ of mandamus to require the State Corporation Commission to produce certain

11

documents that Gannon had requested pursuant to the Virginia Freedom of Information Act, Code § 2.1-340, et seq. The Commission filed responsive pleadings, including a motion to dismiss the petition because Gannon failed to establish the "elements necessary for the issuance of a writ of mandamus." 243 Va. at 481, 416 S.E.2d at 447. The Rules of the State Corporation Commission permitted Gannon to pursue certain action before the Commission in order to obtain the documents that he had requested. Therefore, we held that the writ of mandamus was not an appropriate remedy because Gannon had available to him a specific and adequate legal remedy. 243 Va. at 482-83, 416 S.E.2d at 447-48.

In Richmond Newspapers, Inc. v. Commonwealth, 222 Va. 574, 281 S.E.2d 915 (1981), we considered three consolidated appeals arising out of three criminal prosecutions from three different circuit courts. In each case, the circuit court entered a closure order over the objection of newspapers or their reporters. In each case, the newspapers, including Richmond Newspapers which is a party to these appeals, made petitions to intervene for the purpose of challenging the circuit court's closure order. 222 Va. at 579, 582, 583, 281 S.E.2d at 917, 919, 920. We recognized in Richmond Newspapers the right of a newspaper to intervene in a criminal proceeding for the sole purpose of challenging a circuit court's ruling

12

which closed criminal proceedings.  Id. at 590, 281 S.E.2d at 923-24.

Applying well-established principles, we are compelled to conclude that the respective circuit courts erred by issuing the writs of mandamus.  In both cases, the newspapers had an adequate remedy at law to assert their purported statutory and constitutional claims.  The newspapers were entitled to intervene in the respective preliminary hearings for the limited purpose of asserting their objections to the juvenile and domestic relations district courts' rulings barring them from the courtrooms.  The juvenile and domestic relations district court judges would have been required to grant the motions to intervene and consider the newspapers' objections. See Richmond Newspapers, id.  Our review of the records reveals that the newspapers failed to make formal motions to intervene in the juvenile and domestic relations district courts' proceedings.

Even though Richmond Newspapers asserted in its verified petition for writ of mandamus in the Mason case that "Richmond Newspapers and Jamie Ruff had intervened in the proceeding by filing a motion for an open preliminary hearing," the record before this Court does not show that these petitioners made a formal motion to intervene.  Moreover, had Richmond Newspapers made a formal motion to intervene, mandamus still would not

13

lie because Richmond Newspapers would have been required to appeal any adverse order that may have been entered by the juvenile and domestic relations district court. We have repeatedly held that the extraordinary remedy of mandamus cannot be used as a substitute for an appeal. Morrissette, 246 Va. at 382, 436 S.E.2d at 435; Richlands Medical Ass'n, 230 Va. at 387, 337 S.E.2d at 740.

We will not, as requested by the newspapers, adopt the holdings in In re Worrell Enterprises, Inc., 14 Va. App. 671, 419 S.E.2d 271 (1992), and In re Times-World Corp., 7 Va. App. 317, 373 S.E.2d 474 (1988). In those cases, the Court of Appeals, relying primarily upon federal court decisions, held that mandamus, rather than an appeal, is the appropriate remedy to challenge a closure order in a pending criminal proceeding. These opinions by the Court of Appeals were wrongly decided and, as we have demonstrated, are inconsistent with principles firmly entrenched in our jurisprudence that we have applied for over 150 years. Thus, we decline to accept the expansive view of the extraordinary remedy of mandamus set forth in those opinions.

Accordingly, we will reverse the judgments of the circuit courts, we will vacate the writs, and we will dismiss the petitions.

Record No. 991282 — Judgment reversed,

<u>writ vacated</u>,
and <u>petition dismissed</u>.

Record No. 992677 — <u>Judgment reversed</u>,
<u>writ vacated</u>,
and <u>petition dismissed</u>.

JUSTICE KOONTZ, with whom JUSTICE LACY and JUSTICE KINSER join, dissenting.

I respectfully dissent. The majority acknowledges, without specifically addressing "their purported statutory and constitutional claims," the right of the news media to have access to preliminary hearings conducted in juvenile and domestic relations district courts and to challenge the closure of such hearings. In my opinion, the majority fails to provide an "adequate" remedy for a denial of that right by requiring the news media to "intervene" in those hearings and then to appeal any adverse order that may have been entered by these courts. I have no quarrel with the majority's thorough recitation on the historical role of the writ of mandamus. However, I disagree with the majority's determination that the writ of mandamus is not an appropriate remedy to correct a wrongful denial of the right of access in the circumstances presented in these appeals.

Initially, it is to be stressed that we are concerned here with specific and limited proceedings in the juvenile courts. It is neither asserted nor suggested that the news

15

media, or the public, has any right of access to all proceedings in these courts which historically have not been open to the public. However, with the enactment in 1996 of Code §§ 16.1-241(A)(6), 16.1-269.1(B), and 16.1-269.1(C),[1] the General Assembly significantly altered the traditional role of the juvenile courts in this Commonwealth with regard to juveniles fourteen years of age or older charged with murder or other specified violent felonies. As a result, the juvenile court conducts a "preliminary hearing" and limits its consideration to a determination of "probable cause" that the juvenile committed the charged offense. Upon that determination, the charge is certified to the grand jury of the appropriate circuit court. There, upon indictment by the grand jury, the juvenile is subject to trial as an adult. Manifestly under these statutory procedures, there is no material distinction between the preliminary hearing afforded to the juvenile and that applicable in the general district courts to adults similarly charged with violent felonies.

In much the same way, Code § 16.1-241(I) grants the juvenile court the exclusive original jurisdiction over cases

---

[1]These statutes in combination provide that the preliminary hearing is mandatory when the offense charged is murder in violation of Code §§ 18.2-31, 18.2-32, or § 18.2-40, or aggravated malicious wounding in violation of § 18.2-51.2, and occurs at the Commonwealth's option when the offenses charged are other specified violent felonies.

involving the prosecution of an adult charged with any "offense against the person of a child," and when the charged offense is a felony that jurisdiction is "limited to determining whether or not there is probable cause." Thus, this statute provides for a preliminary hearing with the same purpose and effect as the preliminary hearing applicable to certain juveniles outlined above. Except for the fact that these hearings are conducted in the juvenile court, they are indistinguishable from preliminary hearings conducted in the general district courts for adults charged with other felonies.

Therefore, the combined effect of all the above-referenced statutory enactments requires the conclusion that these preliminary hearings in the juvenile courts are criminal proceedings. It then only remains to be determined whether the fact that these preliminary hearings are held in the juvenile courts takes them outside the ambit of "criminal proceedings" for which there is a qualified constitutional right of news media access.

Beyond question, there is a constitutional right of access of the public, and of the news media as the public's representative, to criminal trials and proceedings held in adult courts. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980); see also Press-Enterprise Co. v. Superior Court,

464 U.S. 501 (1984); Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982).  Indeed, in Press-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986)[hereinafter Press-Enterprise II], the United States Supreme Court held that there is a qualified First Amendment right of news media access to preliminary hearings.  In addition, with regard to pretrial suppression hearings, we have held that there is a qualified right of news media access guaranteed by Article I, Section 12 of the Constitution of Virginia.  Richmond Newspapers v. Commonwealth, 222 Va. 574, 588, 281 S.E.2d 915, 922 (1981).

In Press-Enterprise II, the Supreme Court held that the determination for whether there was a right of access involved a two-part inquiry: (1) "whether the place and process have historically been open to the press and general public" and (2) "whether public access plays a significant positive role in the functioning of the particular process in question". 478 U.S. at 8.  Applying this inquiry to the facts of the present cases, it is self-evident that the criminal nature of these proceedings, and not the nature of the forum, should determine the newspapers' right of access.

As noted above, proceedings in the juvenile courts in this Commonwealth historically have not been open to the public, and in most instances this continues to be so. However, with respect to the particular hearings at issue in

18

the present appeals, the General Assembly has negated that historical tradition by providing in the 1996 amendment of Code § 16.1-302(C) that "proceedings [in the juvenile court] in cases involving an adult charged with a crime and hearings held on a petition or warrant alleging that a juvenile fourteen years of age or older committed an offense which would be a felony if committed by an adult shall be open." (Emphasis added.)

Moreover, as in adult criminal proceedings, public access plays a significant positive role in the functioning of these hearings despite the fact that they are held in the juvenile court. Such access insures a fair hearing to the accused and promotes public confidence in the judicial process. See Richmond Newspapers, 222 Va. at 585, 281 S.E.2d at 921. Consequently, with regard to the specific proceedings in the juvenile courts at issue here, I would find that the newspapers have a qualified right of access guaranteed both by the First Amendment of the Constitution of the United States and by Article I, Section 12 of the Constitution of Virginia.

Examining the present cases in their proper context as criminal proceedings, it becomes clear that the juvenile courts gave insufficient consideration to the newspapers' constitutional rights of access before closing the preliminary hearings. In the Hertz appeal, in addition to certain related

19

felonies, one juvenile was charged with capital murder and the other juvenile was charged with first-degree murder. The applicable provisions of Code §§ 16.1-241(A)(6) and 16.1-269.1(B) were invoked and preliminary hearings were instituted. In the Mason appeal, two adults were charged with multiple counts of aggravated sexual assault and sodomy upon juveniles, invoking the provisions of Code § 16.1-241(I) and leading to preliminary hearings concerning those felony charges. In each instance, the juvenile court judges closed the preliminary hearings despite the attempts of the newspapers to gain access to those hearings.

The right of access of the news media to court proceedings is a hollow one without an effective remedy when that right is wrongfully denied. The majority here does not reach the issue whether the juvenile courts properly closed the hearings in question as subsequently determined by the circuit courts in issuing writs of mandamus. However, there can be no real dispute that such was the case. Code § 16.1-302(C) provides that "the court may, sua sponte or on motion of the accused or the attorney for the Commonwealth close the proceedings . . . [and] shall state in writing its reasons [for closing the proceedings] and the statement shall be made a part of the public record."

20

In the Hertz appeal, as recited in the majority opinion, the totally conclusory statements in the juvenile court's order fall far short of compliance with the mandate of this statute and the circuit court properly so held. In the Mason appeal, the juvenile court relied primarily upon Code § 18.2-67.8 to exclude the news media from the hearing. Again, however, the circuit court properly held that the juvenile court failed to articulate sufficient reasons for closure so that a reviewing court could determine whether that closure was proper. It is in this context that I now turn to consider the remedy available to the news media to correct the wrongful denial of its right of access to these hearings in the juvenile courts.

Relying primarily upon our decision in Richmond Newspapers, the majority concludes that the newspapers were required to file written or formal motions to intervene in the juvenile court proceedings in order to assert their constitutional rights of access and then to appeal the adverse rulings on those motions to the circuit courts.[2] Richmond Newspapers, however, is not dispositive here. In that case,

_____

[2]I am unaware of, and the majority does not identify, any statutory provision for a formal or written motion to intervene in the juvenile court. In any event, the record here is clear that the juvenile court judges were aware of the efforts of the newspapers to assert their rights of access to the proceedings.

21

although one of the closure motions considered had also been challenged by a petition for a writ of mandamus, this Court concluded that it need not address that petition since the Court would reverse the denial of a petition to intervene also filed in the case, mooting the need for mandamus.  222 Va. at 592 n.10, 281 S.E.2d at 925 n.10.  Clearly that case does not stand for the proposition that only intervention and appeal are available to the news media to assert and secure their qualified constitutional rights of access to criminal proceedings.

Moreover, in my view, mandamus, rather than intervention and appeal, is a proper means to challenge the closure order in a pending criminal hearing.  The appeal of a closure order in a pending criminal hearing generally would not permit the issue to be timely addressed by the appellate court because of the typically short duration of such hearings and, thus, the issue would evade review.  Richmond Newspapers, Inc. v. Virginia, 448 U.S. at 563.  Additionally, such preliminary hearings are frequently the only public hearings conducted with regard to a particular offense because the accused subsequently enters a plea in the trial court.  Indeed, this was apparently the circumstance in the present cases. Undoubtedly these and similar reasons led the United States

22

Court of Appeals for the Fourth Circuit to conclude that "[m]andamus, not appeal, 'is the preferred method of review for orders restricting press activity related to criminal proceedings.'" Baltimore Sun Co. v. Goetz, 886 F.2d 60, 63 (4th Cir. 1989)(quoting In re: Washington Post Co., 807 F.2d 383, 388 (4th Cir. 1986)).

As noted by the majority, In re: Worrell Enterprises, Inc., 14 Va. App. 671, 419 S.E.2d 271 (1992) and In re: Times-World Corp., 7 Va. App. 317, 373 S.E.2d 474 (1988), are premised upon these qualified constitutional rights of access of the news media and the federal court decisions establishing mandamus as an appropriate remedy to challenge closure orders in criminal cases.[3] These cases were neither "wrongly decided" nor "inconsistent with principles firmly entrenched in our jurisprudence that we have applied for over 150 years." Morrissette v. McGinniss, 246 Va. 378, 436 S.E.2d 433 (1993), and Richlands Medical Ass'n v. Commonwealth, 230 Va. 384, 337 S.E.2d 737 (1985), cited by the majority for the proposition that mandamus cannot be used as a substitute for an appeal are civil cases and do not address the appropriateness of mandamus

---

[3]This is also the view in a plurality of other state jurisdictions. See generally, Susan L. Thomas, Annotation, Standing of Media Representatives or Organizations to Seek Review Of, or to Intervene to Oppose, Order Closing Criminal Proceedings to Public, 74 A.L.R.4th 476 (1989).

in the context of a pending criminal trial.  In my view, we would do no violence to our jurisprudence by acknowledging that the extraordinary circumstances involved in pending criminal proceedings, where a balance is to be reached between the news media's right of access and the concerns of the accused and the prosecution that give rise to requests for closed proceedings, are the proper subject for a petition for a writ of mandamus.  Rather, for the reasons stated above, we simply would be acknowledging that appeal is not an "adequate" remedy.  See Gannon v. State Corp. Commission, 243 Va. 480, 482, 416 S.E.2d 446, 447 (1992)(noting that where the right involved and the duty sought to be enforced are clear and where there is no other available specific and adequate remedy the writ of mandamus is appropriate).

For these reasons, and because I would further hold that the closure orders of the two juvenile courts did not comport with the requirements of Code § 16.1-302(C), nor were they narrowly tailored to serve any compelling governmental interest, I would affirm the judgments of both circuit courts.