JUSTICE KOONTZ,
with whom JUSTICE LACY and JUSTICE
KINSER join, dissenting.
I respectfully dissent. The majority acknowledges, without specifically addressing “their purported statutory and constitutional claims,” the right of the news media to have access to preliminary hearings conducted in juvenile and domestic relations district courts and to challenge the closure of such hearings. In my opinion, the majority fails to provide an “adequate” remedy for a denial of that right by requiring the news media to “intervene” in those hearings *611 and then to appeal any adverse order that may have been entered by these courts. I have no quarrel with the majority’s thorough recitation on the historical role of the writ of mandamus. However, I disagree with the majority’s determination that the writ of mandamus is not an appropriate remedy to correct a wrongful denial of the right of access in the circumstances presented in these appeals.
Initially, it is to be stressed that we are concerned here with specific and limited proceedings in the juvenile courts. It is neither asserted nor suggested that the news media, or the public, has any right of access to all proceedings in these courts which historically have not been open to the public. However, with the enactment in 1996 of Code §§ 16.1-241(A)(6), 16.1-269.1(B), and ló.l^.UC),[1] the General Assembly significantly altered the traditional role of the juvenile courts in this Commonwealth with regard to juveniles fourteen years of age or older charged with murder or other specified violent felonies. As a result, the juvenile court conducts a “preliminary hearing” and limits its consideration to a determination of “probable cause” that the juvenile committed the charged offense. Upon that determination, the charge is certified to the grand jury of the appropriate circuit court. There, upon indictment by the grand jury, the juvenile is subject to trial as an adult. Manifestly under these statutory procedures, there is no material distinction between the preliminary hearing afforded to the juvenile and that applicable in the general district courts to adults similarly charged with violent felonies.
In much the same way, Code § 16.1-241(1) grants the juvenile court the exclusive original jurisdiction over cases involving the prosecution of an adult charged with any “offense against the person of a child,” and when the charged offense is a felony that jurisdiction is “limited to determining whether or not there is probable cause.” Thus, this statute provides for a preliminary hearing with the same purpose and effect as the preliminary hearing applicable to certain juveniles outlined above. Except for the fact that these hearings are conducted in the juvenile court, they are indistinguishable from preliminary hearings conducted in the general district courts for adults charged with other felonies.
*612 Therefore, the combined effect of all the above-referenced statutory enactments requires the conclusion that these preliminary hearings in the juvenile courts are criminal proceedings. It then only remains to be determined whether the fact that these preliminary hearings are held in the juvenile courts takes them outside the ambit of “criminal proceedings” for which there is a qualified constitutional right of news media access.
Beyond question, there is a constitutional right of access of the public, and of the news media as the public’s representative, to criminal trials and proceedings held in adult courts. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980); see also Press-Enterprise Co. v. Superior Court, 464 U.S. 501 (1984); Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982). Indeed, in Press-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986) [hereinafter Press-Enterprise II], die United States Supreme Court held that there is a qualified First Amendment right of news media access to preliminary hearings. In addition, with regard to pretrial suppression hearings, we have held that there is a qualified right of news media access guaranteed by Article I, Section 12 of the Constitution of Virginia. Richmond Newspapers v. Commonwealth, 222 Va. 574, 588, 281 S.E.2d 915, 922 (1981).
In Press-Enterprise II, the Supreme Court held that the determination for whether there was a right of access involved a two-part inquiry: (1) “whether the place and process have historically been open to the press and general public” and (2) “whether public access plays a significant positive role in the functioning of the particular process in question”. 478 U.S. at 8. Applying this inquiry to the facts of the present cases, it is self-evident that the criminal nature of these proceedings, and not the nature of the forum, should determine the newspapers’ right of access.
As noted above, proceedings in the juvenile courts in this Commonwealth historically have not been open to the public, and in most instances this continues to be so. However, with respect to the particular hearings at issue in the present appeals, the General Assembly has negated that historical tradition by providing in the 1996 amendment of Code § 16.1-302(C) that “proceedings [in the juvenile court] in cases involving an adult charged with a crime and hearings held on a petition or warrant alleging that a juvenile fourteen years of age or older committed an offense which would be a felony if committed by an adult shall be open.’’’’ (Emphasis added.)
*613 Moreover, as in adult criminal proceedings, public access plays a significant positive role in the functioning of these hearings despite the fact that they are held in the juvenile court. Such access insures a fair hearing to the accused and promotes public confidence in the judicial process. See Richmond Newspapers, 222 Va. at 585, 281 S.E.2d at 921. Consequently, with regard to the specific proceedings in the juvenile courts at issue here, I would find that the newspapers have a qualified right of access guaranteed both by the First Amendment of the Constitution of the United States and by Article I, Section 12 of the Constitution of Virginia.
Examining the present cases in their proper context as criminal proceedings, it becomes clear that the juvenile courts gave insufficient consideration to the newspapers’ constitutional rights of access before closing the preliminary hearings. In the Hertz appeal, in addition to certain related felonies, one juvenile was charged with capital murder and the other juvenile was charged with first-degree murder. The applicable provisions of Code §§ 16.1-241(A)(6) and 16.1-269.1(B) were invoked and preliminary hearings were instituted. In the Mason appeal, two adults were charged with multiple counts of aggravated sexual assault and sodomy upon juveniles, invoking the provisions of Code § 16.1-241(1) and leading to preliminary hearings concerning those felony charges. In each instance, the juvenile court judges closed the preliminary hearings despite the attempts of the newspapers to gain access to those hearings.
The right of access of the news media to court proceedings is a hollow one without an effective remedy when that right is wrongfully denied. The majority here does not reach the issue whether the juvenile courts properly closed the hearings in question as subsequently determined by the circuit courts in issuing writs of mandamus. However, there can be no real dispute that such was the case. Code § 16.1-302(C) provides that “the court may, sua sponte or on motion of the accused or the attorney for the Commonwealth close the proceedings . . . [and] shall state in writing its reasons [for closing the proceedings] and the statement shall be made a part of the public record.”
In the Hertz appeal, as recited in the majority opinion, the totally conclusory statements in the juvenile court’s order fall far short of compliance with the mandate of this statute and the circuit court properly so held. In the Mason appeal, the juvenile court relied primarily upon Code § 18.2-67.8 to exclude the news media from the hearing. Again, however, the circuit court properly held that the juve *614 nile court failed to articulate sufficient reasons for closure so that a reviewing court could determine whether that closure was proper. It is in this context that I now turn to consider the remedy available to the news media to correct the wrongful denial of its right of access to these hearings in the juvenile courts.
Relying primarily upon our decision in Richmond Newspapers, the majority concludes that the newspapers were required to file written or formal motions to intervene in the juvenile court proceedings in order to assert their constitutional rights of access and then to appeal the adverse rulings on those motions to the circuit courts.[2] Richmond Newspapers, however, is not dispositive here. In that case, although one of the closure motions considered had also been challenged by a petition for a writ of mandamus, this Court concluded that it need not address that petition since the Court would reverse the denial of a petition to intervene also filed in the case, mooting the need for mandamus. 222 Va. at 592 n.10, 281 S.E.2d at 925 n.10. Clearly that case does not stand for the proposition that only intervention and appeal are available to the news media to assert and secure their qualified constitutional rights of access to criminal proceedings.
Moreover, in my view, mandamus, rather than intervention and appeal, is a proper means to challenge the closure order in a pending criminal hearing. The appeal of a closure order in a pending criminal hearing generally would not permit the issue to be timely addressed by the appellate court because of the typically short duration of such hearings and, thus, the issue would evade review. Richmond Newspapers, Inc. v. Virginia, 448 U.S. at 563. Additionally, such preliminary hearings are frequently the only public hearings conducted with regard to a particular offense because the accused subsequently enters a plea in the trial court. Indeed, this was apparently the circumstance in the present cases. Undoubtedly these and similar reasons led the United States Court of Appeals for the Fourth Circuit to conclude that “[mjandamus, not appeal, ‘is the preferred method of review for orders restricting press activity related to criminal proceedings.’ ” Baltimore Sun Co. v. Goetz, 886 F.2d 60, 63 (4th Cir. 1989) (quoting In re: Washington Post Co., 807 F.2d 383, 388 (4th Cir. 1986)).
*615 As noted by the majority, In re: Worrell Enterprises, Inc., 14 Va. App. 671, 419 S.E.2d 271 (1992) and In re: Times-World Corp., 7 Va. App. 317, 373 S.E.2d 474 (1988), are premised upon these qualified constitutional rights of access of the news media and the federal court decisions establishing mandamus as an appropriate remedy to challenge closure orders in criminal cases.[3] These cases were neither “wrongly decided” nor “inconsistent with principles firmly entrenched in our jurisprudence that we have applied for over 150 years.” Morrissette v. McGinniss, 246 Va. 378, 436 S.E.2d 433 (1993), and Richlands Medical Ass’n v. Commonwealth, 230 Va. 384, 337 S.E.2d 737 (1985), cited by the majority for the proposition that mandamus cannot be used as a substitute for an appeal are civil cases and do not address the appropriateness of mandamus in the context of a pending criminal trial. In my view, we would do no violence to our jurisprudence by acknowledging that the extraordinary circumstances involved in pending criminal proceedings, where a balance is to be reached between the news media’s right of access and the concerns of the accused and the prosecution that give rise to requests for closed proceedings, are the proper subject for a petition for a writ of mandamus. Rather, for the reasons stated above, we simply would be acknowledging that appeal is not an “adequate” remedy. See Gannon v. State Corp. Commission, 243 Va. 480, 482, 416 S.E.2d 446, 447 (1992) (noting that where the right involved and the duty sought to be enforced are clear and where there is no other available specific and adequate remedy the writ of mandamus is appropriate).
For these reasons, and because I would further hold that the closure orders of the two juvenile courts did not comport with the requirements of Code § 16.1-302(C), nor were they narrowly tailored to serve any compelling governmental interest, I would affirm the judgments of both circuit courts.

 These statutes in combination provide that the preliminary hearing is mandatory when the offense charged is murder in violation of Code §§ 18.2-31, 18.2-32, or § 18.2-40, or aggravated malicious wounding in violation of § 18.2-51.2, and occurs at the Commonwealth’s option when the offenses charged are other specified violent felonies.

 I am unaware of, and the majority does not identify, any statutory provision for a formal or written motion to intervene in the juvenile court. In any event, the record here is clear that the juvenile court judges were aware of the efforts of the newspapers to assert their rights of access to the proceedings.

 This is also the view in a plurality of other state jurisdictions. See generally, Susan L. Thomas, Annotation, Standing of Media Representatives or Organizations to Seek Review Of, or to Intervene to Oppose, Order Closing Criminal Proceedings to Public, 74 A.L.R.4th 476 (1989).