COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Willis


IN RE:  TIMES-WORLD CORPORATION                    OPINION
                                                  PER CURIAM
        Record No. 1145-97-3                   AUGUST 12, 1997


                UPON A PETITION FOR A WRIT OF MANDAMUS

            (D. Stan Barnhill; Philip W. Parker; Woods,
            Rogers & Hazlegrove, on brief), for
            petitioner.

            (Richard Cullen, Attorney General; Gregory E.
            Lucyk, Senior Assistant Attorney General;
            Peter R. Messitt, Senior Assistant Attorney
            General, on brief), for respondent.

            (Terry N. Grimes; Malcolm McL. Doubles; King,
            Fulghum, Snead, Nixon & Grimes, on brief),
            for Earl Conrad Bramblett.



        Times-World Corporation ("Times-World") seeks access to the

videotape of testimony and documents admitted into evidence in

the competency hearing conducted on May 6, 1997, in the matter of

Commonwealth v. Earl Conrad Bramblett, a criminal proceeding

currently pending in the Roanoke County Circuit Court.  The trial

court ordered the competency hearing closed to the public,

including the media.  Times-World, publisher of The Roanoke

Times, contends that the trial court's order abridges the freedom

of the press in violation of the First Amendment of the United

States Constitution and Article I, § 12 of the Virginia

Constitution.  Because we find that the trial court improperly

denied Times-World access to the hearing and documents, we grant

the petition for the writ of mandamus.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Earl Conrad Bramblett is charged with the murders of Blaine and Teresa Hodges and their two children, Winter and Anah Hodges. The matter is scheduled to be tried in the Roanoke County Circuit Court on October 14, 1997.  Following his indictment for these crimes, Bramblett filed a motion for change of venue and a notice of intent to present an insanity defense.

A competency hearing was scheduled for May 6, 1997, at 2:00 p.m.  On the afternoon of Friday, May 2, 1997, Bramblett filed a motion to exclude the media from the competency hearing.  A hearing on Bramblett's motion was held on May 6, 1997, at 9:00 a.m.  At the hearing, Bramblett presented no evidence in support of his motion to exclude the media.  He merely contended that his right to a fair trial would be prejudiced, arguing that the evidence presented at the hearing would not likely be admitted at trial and that the nature of the case rendered voir dire an inadequate means of producing a fair and impartial jury to hear the case.  The Commonwealth neither opposed the motion nor presented any evidence.

The trial court granted the motion on the ground that there was a "basis in law" for closure.  The court took notice of all the proceedings that had been held in the matter as of that date, including the fact that Bramblett had filed a motion for change in venue.  The court expressed concern about being able to seat an impartial jury and noted that the evidence to be addressed at

the competency hearing would be inadmissible at trial.  The court also felt that press access to a hearing where confidential information about Bramblett would be disclosed would compromise Bramblett's physician-patient privilege.  The trial court did not expressly address in its oral ruling any less restrictive alternatives to closure, including voir dire.

That same afternoon, Times-World presented an oral motion to this Court requesting an order postponing the competency hearing.  We denied the motion but ordered the trial court to retain the videotape of the hearing as a potential remedy for Times-World.

## II.  THE AVAILABILITY OF MANDAMUS AS A REMEDY

Bramblett, citing Morrissette v. McGinniss, 246 Va. 378, 436 S.E.2d 433 (1993), asserts that mandamus is unavailable to Times-World because mandamus is not a substitute for appeal and cannot be applied retroactively to correct a completed wrong. Morrissette, however, did not involve the closure of a criminal proceeding, but, rather, a citizen's attempt, through a petition for writ of mandamus, to challenge the creation of a public service authority.  See id. at 381, 436 S.E.2d at 434.

"[M]andamus rather than appeal is the proper means to challenge the closure order in a pending criminal trial."  In re Worrell Enters., Inc., 14 Va. App. 671, 675, 419 S.E.2d 271, 274 (1992) (emphasis added); accord Baltimore Sun Co. v. Goetz, 886 F.2d 60, 63 (4th Cir. 1989) ("Mandamus, not appeal, 'is the preferred method of review for orders restricting press activity

- 3 -

related to <u>criminal proceedings</u>.'") (quoting <u>In re Washington Post</u>, 807 F.2d 383, 388 (4th Cir. 1986) (emphasis added)).

Furthermore, the relief Times-World seeks, or a reasonable substitute therefor, is still available.  We directed the trial court to retain a videotape of the competency hearing in the event that the writ was granted.  Moreover, "both the parties and the trial judges are entitled to a decision on the merits." <u>Richmond Newspapers, Inc. v. Commonwealth</u>, 222 Va. 574, 592, 281 S.E.2d 915, 925 (1981) (noting that the criminal proceedings had been terminated by the time of the Court's review).  The Supreme Court "has frequently recognized . . . that its jurisdiction is not necessarily defeated by the practical termination of a contest which is short-lived by nature.  If the underlying dispute is 'capable of repetition, yet evading review,' it is not moot."  <u>Richmond Newspapers, Inc. v. Virginia</u>, 448 U.S. 555, 563 (1980) (citations omitted); <u>see</u> <u>In re Times-World Corp.</u>, 7 Va. App. 317, 323-24, 373 S.E.2d 474, 477 (1988) (holding that a petition for writ of mandamus was not moot despite the fact that the trial had concluded by the time of appellate review).[1]

<u>Morrissette</u> is factually distinguishable from this case and is not controlling.  Accordingly, we decline to deny the petition for writ of mandamus on the basis of <u>Morrissette</u>.

_____

[1] Both <u>Press-Enterprise Co. v. Superior Court</u>, 464 U.S. 501 (1984) (<u>Press-Enterprise I</u>), and <u>Press-Enterprise Co. v. Superior Court</u>, 478 U.S. 1 (1986) (<u>Press-Enterprise II</u>), originated as petitions for writs of mandate in state court.

III.  RIGHT OF ACCESS TO A CRIMINAL COMPETENCY HEARING

In Richmond Newspapers, the United States Supreme Court ruled that the press has a First Amendment right to attend criminal trials.  See 448 U.S. at 580.  This qualified right of access was subsequently extended to juror voir dire, see Press-Enterprise I, 464 U.S. at 501, and preliminary hearings.  See Press-Enterprise II, 478 U.S. at 1.  In Richmond Newspapers, 222 Va. at 588, 281 S.E.2d at 922, the Virginia Supreme Court recognized a qualified right of press access to suppression hearings and motions in limine under Article I, § 12 of the Virginia Constitution.

A First Amendment right of access exists where (1) "the place and process have historically been open to the press and general public," Press-Enterprise II, 478 U.S. at 8; and (2) "public access plays a significant positive role in the functioning of the particular process in question."  Id.; see In re Worrell, 14 Va. App. at 676, 419 S.E.2d at 274 (applying Press-Enterprise II test to claim of access under Virginia Constitution); cf. Richmond Newspapers, 222 Va. at 586, 281 S.E.2d at 921-22 (finding no history to review with regard to suppression hearings and focusing, instead, on the importance of public access).  With regard to historical access, "the 'experience' test of Globe Newspaper [Co. v. Superior Court, 457 U.S. 596 (1982)], does not look to the particular practice of any one jurisdiction, but instead 'to the experience in that type or

- 5 -

kind of hearing throughout the United States . . . .'"  El Vocero
de P. R. v. Puerto Rico, 508 U.S. 147, 150 (1993) (citation
omitted).  "If the particular proceeding in question passes these

tests of experience and logic, a qualified First Amendment right of public access attaches."  Press-Enterprise II, 478 U.S. at 9.

"In the first inquiry, the court asks whether the type of proceeding at issue has traditionally been conducted in an open fashion."  In re Washington Post, 807 F.2d at 389.  Although we have no recorded tradition in Virginia regarding public access to competency hearings, courts in other jurisdictions have favored a qualified right of access to such proceedings.  In Westchester Rockland Newspapers Corp. v. Leggett, 399 N.E.2d 518 (N.Y. 1979), applying state law, the Court of Appeals of New York found that the media had been improperly excluded from a competency hearing.  In Miami Herald Publ'g Co. v. Chappell, 403 So. 2d 1342, 1344 (Fla. Dist. Ct. App. 1981), a Florida court found a First Amendment right of access to a criminal competency hearing.  See also Society of Prof'l Journalists v. Bullock, 743 P.2d 1166, 1178 (Utah 1987) (finding qualified right of access to competency hearing).

We have found no appellate decision, and none has been cited to us, denying the press a qualified right of access to criminal competency hearings.  To the contrary, the recent trend favors access.  Accordingly, we find the "experience" throughout the United States favors access, thus satisfying the first prong of the Press-Enterprise II test.  See El Vocero de P. R., 508 U.S. at 150.

We must now determine whether the interest in public access

justifies granting a qualified right to attend criminal competency hearings.

"[T]he public's interest in the conduct of the judicial system may be even more acute when pretrial hearings are involved." Richmond Newspapers, 222 Va. at 587, 281 S.E.2d at 922. In finding a state constitutional right of access to suppression hearings and motions in limine, the Virginia Supreme Court noted the importance of the public's ability to judge for itself whether the proper balance was being struck between the rights of the accused and the rights of the community. See id. The Court concluded that "pretrial suppression hearings are as important to our criminal justice system as the trial itself, and to allow the public to view the trial without any knowledge of what has taken place previously would make the right of access granted in Richmond Newspapers[, 448 U.S. 555,] a hollow one." Id. at 588, 281 S.E.2d at 922.

The jurisdictions that have addressed this specific issue have recognized the importance of press access to competency hearings. The court in Miami Herald noted that "'if the public is routinely excluded from all proceedings prior to trial, most of the work of the criminal courts will be done behind closed doors.' Competency proceedings [like other pretrial proceedings] may also postpone or terminate the need for trial." Miami Herald, 403 So. 2d at 1345 (quoting Westchester Rockland Newspapers, 399 N.E.2d at 523).

Given [the] strong public policy against

- 8 -

> trying an incompetent person for a criminal offense, it seems plain that the proceeding at which competency is determined is a significant one in the criminal process. The public should be entitled to scrutinize the implementation of this policy, unless strong countervailing considerations warrant closure.

Society of Prof'l Journalists, 743 P.2d at 1178.

Public access can play a significant positive role in criminal competency hearings, thus satisfying the second prong of the Press-Enterprise II test. A competency hearing can postpone, sometimes indefinitely, the trial of an accused. Citizens of the Commonwealth have a right to know that the incompetent are not tried and that the competent do not evade trial. Because criminal competency hearings pass "these tests of tradition and logic," Press-Enterprise II, 478 U.S. at 9, we hold that both the First Amendment to the United States Constitution and Article I, § 12 of the Virginia Constitution grant the media a qualified right to attend these proceedings.

Once a First Amendment right attaches, access to a proceeding can only be denied by showing "a 'compelling governmental interest' and the denial must be 'narrowly tailored to serve that interest.'" In re Times-World, 7 Va. App. at 325, 373 S.E.2d at 478 (quoting Globe Newspaper, 457 U.S. at 606-07). The court ordering closure must make "specific . . . findings that (1) there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity; (2) there is a substantial probability that closure would prevent that

prejudice; and (3) reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." In re Charlotte Observer, 882 F.2d 850, 853 (4th Cir. 1989) (citing Press-Enterprise II, 478 U.S. at 14). "[T]he trial judge shall articulate on the record his findings that the evidence supports the moving party's contention that an open hearing would jeopardize the defendant's fair trial rights . . . ." Richmond Newspapers, 222 Va. at 590, 281 S.E.2d at 924 (emphasis added).

While adverse publicity might impair the defendant's ability to receive a fair trial, the mere "risk of prejudice does not automatically justify refusing public access to hearings on every motion to suppress." Press-Enterprise II, 478 U.S. at 15. "The First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of [the right to a fair trial]." Id. "[T]he burden [is] on the moving party to show that an open hearing would jeopardize the defendant's right to a fair trial." Richmond Newspapers, 222 Va. at 590, 281 S.E.2d at 924 (citing Gannett Co. v. DePasquale, 443 U.S. 368, 401 (1979)). Furthermore, even if a substantial probability exists that publicity will impair the defendant's right to a fair trial, the court must still review alternatives to closure that will protect the defendant's rights. See In re Charlotte Observer, 882 F.2d at 853.

The intervenor has "the burden of showing that reasonable alternatives to closure are available." Richmond Newspapers, 222

Va. at 590, 281 S.E.2d at 924.  The Supreme Court has identified voir dire as an effective alternative a trial court can employ to "identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict." Press-Enterprise II, 478 U.S. at 15.  The court in In re Charlotte Observer remarked that the trial court gave "much too short shrift to the capability of jury voir dire to guard against the potential prejudice of pretrial publicity . . . . Voir dire is of course the preferred safeguard against this particular threat to fair trial rights."  In re Charlotte Observer, 882 F.2d at 855.  The court then noted the efficacy of voir dire in cases involving the Watergate defendants, the Abscam defendants, and John DeLorean.  See id.; see also Thomas v. Commonwealth, 244 Va. 1, 11, 419 S.E.2d 606, 611 (finding, in denying defendant's motion for change in venue, that voir dire is the best tool for uncovering the truth about possible bias resulting from pretrial publicity), cert. denied, 506 U.S. 958 (1992).

Bramblett argues that allowing Times-World access to the competency hearing would jeopardize his right to a fair trial. However,

> [e]vidence relevant and admissible to establish the defendant's capacity to understand the legal proceedings and to assist his attorney would ordinarily reveal little or nothing about his possible guilt of the crimes charged.  Nor is it foreseeable that public disclosure of the proof would frustrate the purpose of such a hearing.

Westchester Rockland Newspapers, 399 N.E.2d at 524.  "Statements

concerning the defendant's guilt, innocence or sanity at the time of the offense are not material because they relate to different issues.  It is therefore unlikely that testimony jeopardizing a defendant's right to a fair trial would be elicited."  Miami Herald, 403 So. 2d at 1344; see Society of Prof'l Journalists, 743 P.2d at 1178 (noting that "pretrial competency hearings present fewer inherent dangers of prejudice than preliminary hearings").

The trial court was concerned with the implications of access on Bramblett's physician-patient privilege.  However, "[t]here exists . . . no physician-patient privilege in a criminal prosecution in Virginia.  The common law recognized no such privilege in either civil or criminal proceedings.  While Virginia has enacted a statutory privilege, it is expressly confined to civil proceedings."  Gibson v. Commonwealth, 216 Va. 412, 414, 219 S.E.2d 845, 847 (1975), cert. denied, 425 U.S. 994 (1976) (citation omitted).  Even in civil matters, however, the privilege is waived if the mental condition of the patient is at issue.  See Code § 8.01-399(B).  It would follow, by analogy, that no physician-patient privilege supersedes the media's constitutional right to attend such a proceeding, because the defendant's mental condition is at issue in a criminal competency hearing.

The parties presented no testimony or physical evidence in support of the motion to close the competency hearing.  Thus, the

trial court had no evidence on which to make findings of fact in support of its order of closure. Furthermore, while the court noted its concern about seating an impartial jury, it did not expressly address voir dire or other reasonable alternatives to closure. Bramblett failed to establish a substantial probability that his right to a fair trial would be prejudiced by allowing Times-World access to the videotape of the competency hearing. Further, we are satisfied that properly conducted voir dire is a reasonable available alternative to closure. Accordingly, we hold that the trial court erred by denying Times-World access to the competency hearing.

IV.  ACCESS TO DOCUMENTS ADMITTED AT COMPETENCY HEARING

The same analysis employed to determine whether the media has a right of access to a criminal competency hearing is applicable to determine media access to documents that were submitted into evidence therein. See In re Worrell, 14 Va. App. at 676, 419 S.E.2d at 274; see also In re Washington Post, 807 F.2d at 390 ("[T]he First Amendment right of access applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases, as well as to the hearings themselves."); In re New York Times Co., 828 F.2d 110 (2d Cir. 1987) (finding that the right of access extended to motions papers submitted by a defendant seeking to suppress evidence); Associated Press, Inc. v. United States Dist. Court, 705 F.2d 1143, 1145 (9th Cir. 1983) (finding First Amendment right of

access extends to "pretrial documents in general").

We have held that the media does not have a constitutional right of access to documents produced by parties through discovery in a criminal matter.  See In re Worrell, 14 Va. App. at 680, 419 S.E.2d at 277.  The documents here, however, are not unfiled discovery documents but were admitted into evidence in a proceeding that should have been open to the public.  Cf. People v. Adkins, 514 N.W.2d 148, 150 (Mich. 1994) (finding no qualified right of access to criminal competency report not admitted into evidence).  Accordingly, In re Worrell is not controlling.  We hold that our rationale allowing Times-World access to the videotape of the competency hearing is equally applicable to the documents admitted into evidence therein.

### V.  CONCLUSION

In summary, we hold that the First Amendment of the United States Constitution and Article I, § 12 of the Virginia Constitution grant a qualified right of access to criminal competency hearings and documents admitted into evidence therein. Bramblett presented no evidence showing a substantial probability that his right to a fair trial would be prejudiced by Times-World's access to the videotape of the proceeding or to the documents admitted therein.  Likewise, the trial court made no findings of fact in support of the closure order, nor did it sufficiently consider the reasonable alternatives to closure, including voir dire.  Accordingly, the application for a writ of

mandamus is granted.

                                                        Granted.