COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Elder and Humphreys
Argued at Richmond, Virginia


THE DAILY PRESS, INC. AND
 ASHLEY KELLY

                                                        OPINION BY
v.     Record No. 1005-11-1        CHIEF JUDGE WALTER S. FELTON, JR.
                                                        MAY 22, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
H. Vincent Conway, Jr., Judge

Hunter W. Sims, Jr. (R. Johan Conrod, Jr.; Kaufman & Canoles,
P.C., on briefs), for appellants.

Robert H. Anderson, III, Senior Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.


The Daily Press, Inc. and Ashley Kelly (collectively "appellants") appeal from an order of

the Circuit Court of the City of Newport News ("trial court") directing the Commonwealth and

defense counsel in the case of Commonwealth of Virginia v. Lillian Callender (Nos. CR10-01420,

CR10-01421, and CR10-01422) [hereinafter Callender] to remove original photographs and an

autopsy report, admitted into evidence during the Callender trial, from the public court file in that

case, and placing photocopies of the exhibits that were retained in the court file under seal.

Appellants assert the trial court failed to make the required findings under Press-Enterprise Co. v.

Superior Court, 478 U.S. 1 (1986), prior to ordering the exhibits and photocopies sealed, that the

order was not the least restrictive means of protecting the interests identified by the trial court, and

that the order violated appellants' right to access public judicial records, in violation of the United

States and Virginia Constitutions and Code § 17.1-208.[1]

## I. BACKGROUND

On August 9, 2010, a grand jury in the City of Newport News indicted Lillian Callender and

Michael Stoffa for felony child neglect of Callender's seventeen-month-old and

twenty-seven-month-old daughters, in violation of Code § 18.2-371.1(A), and for second-degree

murder of Callender's seventeen-month-old daughter, in violation of Code § 18.2-33.  Following a

bench trial on January 24, 2011, the trial court convicted Callender of second-degree murder of her

seventeen-month-old daughter and felony child neglect of both daughters.[2]  The trial court

sentenced Callender on July 21, 2011.

In March 2011, Kelly, a reporter for The Daily Press, Inc., requested permission from the

clerk of the trial court to review the public court file related to Callender's trial.  The clerk denied

appellants' request.  On March 28, 2011, without notice or hearing,[3] the trial court entered an order

---

[1] Code § 17.1-208 provides, in pertinent part:

> Except as otherwise provided by law, any records and papers of
> every circuit court that are maintained by the clerk of the circuit
> court shall be open to inspection by any person and the clerk shall,
> when requested, furnish copies thereof, except in cases in which it
> is otherwise specially provided.

[2] Six months later, following a bench trial on May 26, 2011, the trial court found Stoffa, Callender's co-defendant, guilty of second-degree murder of Callender's seventeen-month-old daughter and felonious child neglect of both Callender's daughters, and sentenced him on August 19, 2011.

[3] In Richmond Newspapers, Inc. v. Commonwealth, 222 Va. 574, 281 S.E.2d 915 (1981), the Supreme Court held that the public and press have a constitutional right under Article I, Section 12 of the Virginia Constitution to attend pretrial proceedings in criminal cases, unless "'a fair trial for the defendant is likely to be jeopardized' by an open pretrial hearing."  Id. at 589, 281 S.E.2d at 923 (quoting Gannett Co. v. DePasquale, 443 U.S. 368, 400 (1979) (Powell, J., concurring)).  The Court further stated that "the public *must have notice* of the closure motion. . . . [M]otions to close a hearing should be made in writing and filed with the court before the day of the hearing involved, and the public *must be given reasonable notice* that a

- 2 -

sealing the entire court file "from the public until the conclusion of [Callender's and Stoffa's] cases." On April 12, 2011, appellants filed a consolidated motion to intervene in Callender and for the trial court to unseal the court file in that case. Appellants argued that the trial court's order to place the public court file under seal violated the First Amendment to the United States Constitution, provisions of the Virginia Constitution, and Code § 17.1-208.

On April 20, 2011, at a hearing on appellants' motions, the trial court granted appellants' motion to intervene in Callender without hearing argument, "finding that [appellants] [are] a proper party to this hearing." The trial court further "[found] that the [o]rder entered March 28, 2011 was overbroad in sealing the *entire* file." After hearing argument from the parties, the trial court stated that "the exhibits, the pictures, [and] the medical reports" admitted into evidence during Callender's bench trial "have not, to my knowledge, been open to the public other than by submission to this [c]ourt." The trial court stated its concern for Stoffa's "due process" rights and his interest in "not allow[ing]" the exhibits and photographs admitted into evidence in Callender "to be disseminated until [they are] properly introduced by the Commonwealth and accepted by th[e] [trial] [c]ourt against [Stoffa]." The trial court stated that "[t]he [c]ourt's consideration is the dissemination and publication of information contained in the original exhibits prior to the introduction of those documents by the Commonwealth."

The trial court, over appellants' objections, ordered the clerk of the court "to secure the withdrawal of the original exhibits [admitted into evidence at Callender's trial] and to place *under seal* the photocopies of same to be retained in the Callender file." It further ordered the clerk of the court to release the original exhibits to the Commonwealth and Callender's counsel for use at Stoffa's upcoming trial. It ordered the Commonwealth and Callender's counsel to return the

---

closure hearing will be conducted." Id. at 590, 281 S.E.2d at 923-24 (citations and footnote omitted) (emphasis added). Here, the trial court failed to give notice or conduct a hearing prior to its March 28, 2011 order to place the entire Callender court file under seal.

original exhibits "to the Callender file should an appeal be noted in her case" and, in any event, to return the exhibits to the court file "after the trial of Michael Stoffa has concluded." Finally, the trial court ordered "that the remainder of [the court] file shall be available for public inspection," and "[o]ther than the exhibits withdrawn as authorized above, as well as copies thereof secured by the clerk, and other reports customarily deemed confidential and not available for public inspection, the [c]ourt's [March 28, 2011] [o]rder to seal is rescinded."

On May 6, 2011, appellants petitioned this Court to issue a writ of mandamus ordering the trial court to vacate its April 22, 2011 order in which it permitted the Commonwealth and Callender's counsel to withdraw the original trial exhibits from the Callender court file and sealed the photocopies of the exhibits that were retained in that file. We denied appellants' petition for a writ of mandamus by order on May 24, 2011, concluding that

> [t]he trial court had no duty to seal the trial exhibits, and its decision to do so involved an exercise of the court's discretion. See [Perreault v. The Free Lance-Star, 276 Va. 375, 389, 666 S.E.2d 352, 360 (2008)]. Accordingly, mandamus does not lie to order the trial court to reverse a decision reached in its discretion.

In re The Daily Press and Ashley Kelly, No. 0924-11-1 (Va. Ct. App. May 24, 2011).

On August 26, 2011, appellants petitioned this Court for appeal from the trial court's order permitting the removal of the original trial exhibits by the Commonwealth and Callender's counsel and sealing the photocopies of the exhibits retained in the Callender court file. We granted appellants' petition for appeal on October 27, 2011. In addition to the two assignments of error raised in appellants' petition, we ordered additional briefing from the parties addressing (i) whether appellants' assignments of error were waived under Rule 5A:18 and (ii) whether we had jurisdiction to hear an appeal from the order of the trial court sealing the file in part in this case.

- 4 -

## II. ANALYSIS

### Jurisdiction

The threshold question presented is whether Code § 17.1-406(A)(i) confers jurisdiction on this Court to hear an appeal from an order of the trial court permitting the Commonwealth and Callender's counsel to withdraw original trial exhibits from the <u>Callender</u> court file and placing photocopies of the exhibits that were retained in that file under seal. Appellants assert that this Court is the proper venue for their appeal because, as third-party interveners in <u>Callender</u>, they constitute an "aggrieved party" petitioning for appeal from a "final conviction in a circuit court," pursuant to Code § 17.1-406(A)(i). The Commonwealth contends this Court is not the proper venue for this appeal because appellants merely challenge an ancillary or procedural order of the trial court; are not aggrieved by Callender's conviction in the trial court; and do not challenge Callender's conviction or sentence. Code § 17.1-406(A)(i).

Code § 17.1-406(A)(i) provides, in pertinent part, that "[a]ny aggrieved party may present a petition for appeal to the Court of Appeals from (i) any final conviction in a circuit court of . . . a crime, except where a sentence of death has been imposed . . . ."

### (i)  Interpreting Code § 17.1-406(A)(i)

When interpreting statutory language that

> "is plain and unambiguous, we are bound by the plain meaning of that statutory language. Thus, when the General Assembly has used words that have a plain meaning, courts cannot give those words a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed."

<u>Beck v. Shelton</u>, 267 Va. 482, 488, 593 S.E.2d 195, 198 (2004) (quoting <u>Lee County v. Town of St. Charles</u>, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002)). Where bound by the plain meaning of the language used in a statute, we are not permitted "to add to or subtract from the words used in the statute." <u>Posey v. Commonwealth</u>, 123 Va. 551, 553, 96 S.E. 771, 771 (1918). We adhere

- 5 -

to the principle that "we must . . . assume . . . the legislature chose, with care, the words it used when it enacted the relevant statute." Barr v. Town & Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990). It is incumbent upon us to give reasonable effect to every word. Moyer v. Commonwealth, 33 Va. App. 8, 35, 531 S.E.2d 580, 593 (2000) (*en banc*). In giving reasonable effect to every word, we presume the legislature used the word in its ordinary sense in the absence of a specific, statutory definition. Id.

The legislature chose to use the words "from a final *conviction* in a circuit court of . . . a crime" in delineating our jurisdiction under Code § 17.1-406(A)(i). (Emphasis added). Black's Law Dictionary 335 (7th ed. 1999) defines the word "conviction" as "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty." Here, appellants do not appeal from the process utilized in "finding [Callender] guilty of a crime," nor do they appeal from Callender's "having been proved guilty" of felony child neglect and second-degree murder. Id. It would strain the ordinary meaning of the word "conviction," as it is used in Code § 17.1-406(A)(i), to interpret the Court as having jurisdiction over an appeal that arises by virtue of an order of the trial court that is wholly ancillary to, and has no bearing at all on, Callender's conviction. See Melanson v. Commonwealth, 261 Va. 178, 183, 539 S.E.2d 433, 435 (2001) ("'The plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction.'" (quoting Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998))).

Further, in demarcating our appellate jurisdiction under Code § 17.1-406(A)(ii)-(iv), not in issue here, the General Assembly authorized this Court to entertain appeals from, respectively, "any final *decision* of a circuit court," "any final *order* of a circuit court," and "any final *order* for declaratory or injunctive relief." (Emphases added). "When the General Assembly uses different terms in the same act, it is presumed to mean different things." Campbell v.

Commonwealth, 13 Va. App. 33, 38, 409 S.E.2d 21, 24 (1991). The General Assembly could have authorized appeals to this Court from parties aggrieved by certain "orders" or "decisions" of the trial court in criminal cases under Code § 17.1-406(A)(i), but it chose not to do so.

### (ii) Supreme Court Precedent

The Supreme Court's holdings in Commonwealth v. Southerly, 262 Va. 294, 551 S.E.2d 650 (2001), and Green v. Commonwealth, 263 Va. 191, 557 S.E.2d 230 (2002), support a narrow interpretation of our jurisdiction under Code § 17.1-406(A)(i).

In Southerly, the Supreme Court concluded that this Court lacked jurisdiction to consider the petitioner's appeal from the circuit court's denial of his motion, filed seven years after his conviction as an adult in circuit court, asserting that his conviction was void because the juvenile and domestic relations district court ("JDR court") failed to comply with the notice requirements of former Code §§ 16.1-263 and -264. The Supreme Court initially stated that "the statute governing the Court of Appeals' appellate jurisdiction in criminal cases is what really controls." Southerly, 262 Va. at 299, 551 S.E.2d at 653. The Supreme Court held that "[t]he statutory language [of Code § 17.1-406(A)(i)] is restrictive, limiting the Court of Appeals' appellate jurisdiction to appeals from final criminal convictions and from action on motions filed and disposed of while the trial court retains jurisdiction over the case.[4] *That entire process is purely*

---

[4] In isolation, this statement might be read as suggesting that this Court has jurisdiction over appellants' appeal from the trial court's order as one that arises "from [an] action on motions filed and disposed of while the trial court retain[ed] jurisdiction over [the Callender] case." Southerly, 262 Va. at 299, 551 S.E.2d at 653. However, when read in context of the entire Southerly opinion, it is clear that the Supreme Court held that this Court has jurisdiction over appeals "from action on motions filed and disposed of while the trial court retain[ed] jurisdiction over the case" only when that action falls within the "purely criminal" conviction process, id., and otherwise embodies "'a continuation of the criminal prosecution,'" id. (quoting Virginia Dep't of Corrections v. Crowley, 227 Va. 254, 262, 316 S.E.2d 439, 443 (1984)). This Court has no authority to exercise appellate jurisdiction under Code § 17.1-406(A)(i) where, as here, the trial court action complained of was neither a continuation of the criminal prosecution nor part of the "purely criminal process" of conviction. Green, 263 Va. at 194, 557 S.E.2d at 232.

- 7 -

*criminal in nature . . . .*" Id. (emphasis and footnote added).  The Supreme Court concluded that

Southerly's motion fell outside the purview of this Court's appellate jurisdiction under Code

§ 17.1-406(A)(i) because it was "'in no sense a continuation of the criminal prosecution.'"  Id.

(quoting Virginia Dep't of Corrections v. Crowley, 227 Va. 254, 262, 316 S.E.2d 439, 443

(1984)).

In Green, 263 Va. 191, 557 S.E.2d 230, the Supreme Court held that the petitioner in that

case properly appealed the circuit court's revocation of his suspended sentence to this Court

because the circuit court retained jurisdiction under Code § 19.2-306[5] to revoke all or part of his

suspended sentence.  The Supreme Court emphasized that the "circuit court's jurisdiction to

revoke a convict's probation and suspension of sentence is part of th[e] *purely criminal process*"

over which this Court may exercise appellate jurisdiction.  Id. at 194, 557 S.E.2d at 232

(emphasis added).

Here, as in Southerly, 262 Va. 294, 551 S.E.2d 650, the trial court's decision to seal a

portion of the Callender court file from public inspection was neither a continuation of the

criminal prosecution of Callender, nor a process that "[was] purely criminal in nature."  Id. at

299, 551 S.E.2d at 653.  The trial court's order to seal a portion of the Callender court file was

civil in nature, notwithstanding the fact that Callender's "underlying charge [was] criminal in

nature."  See id. at 298, 551 S.E.2d at 652 ("This is not to say that if the underlying charge is

criminal in nature, the appeal is automatically criminal in nature.").

Consistent with the principles of statutory construction and the rationale articulated by

the Supreme Court in Southerly and Green, we conclude that this Court does not have

---

[5] Code § 19.2-306(A) provides, in pertinent part, that "[i]n any case in which the court
has suspended the execution or imposition of sentence, the court may revoke the suspension of
sentence for any cause the court deems sufficient that occurred at any time within the probation
period, or within the period of suspension fixed by the court."

jurisdiction to consider appellants' appeal from the trial court's order directing the removal of original exhibits from the Callender court file and placing photocopies of those exhibits under seal. Appellants were not aggrieved by and do not appeal "from a final conviction" in the trial court. Code § 17.1-406(A)(i). The trial court's order to remove exhibits and place under seal photocopies of those exhibits was not a purely criminal matter falling under the Court's jurisdiction, pursuant to Code § 17.1-406(A)(i).[6]

---

[6] Appellants cite Hertz v. Times-World Corp., 259 Va. 599, 528 S.E.2d 458 (2000), in support of their contention that this Court has jurisdiction to entertain their appeal. In Hertz, the Supreme Court held that an appeal "is the appropriate remedy to challenge a closure order in a pending criminal proceeding." Id. at 610, 528 S.E.2d at 464. The Supreme Court stated that media outlets "were entitled to intervene in the respective preliminary hearings for the limited purpose of asserting their objections to the [JDR] courts' rulings barring them from the courtrooms." Id. at 609, 528 S.E.2d at 463. The Supreme Court stated that the interveners "*would have been required to appeal any adverse order* that may have been entered by the [JDR] court[s]." Id. at 610, 528 S.E.2d at 464 (emphasis added).

Appellants assert they adhered to the process endorsed by the Supreme Court in Hertz by intervening in the trial court, thereby making themselves a party to Callender. Appellants contend they constitute an "aggrieved party" who "may present a petition for appeal to" this Court because Callender did not involve "a sentence of death" and the sealing order entered in that case was adverse to their interests as third-party interveners. Code § 17.1-406(A)(i).

The Commonwealth asserts that appellants' reliance on Hertz is misplaced because the Supreme Court never purported to identify which appellate court would have jurisdiction over an appeal of a trial court's sealing order. See Hertz, 259 Va. at 610, 528 S.E.2d at 464 (noting only that, had the media outlets intervened in the JDR courts, they "would have been required to appeal any adverse order that may have been entered by the [JDR] court[s]").

We agree with the Commonwealth. Nothing in Hertz, a case decided before Southerly and Green, suggests that an appeal from a circuit court's sealing order in a noncapital case constitutes a criminal appeal, much less an appeal from a "final conviction . . . of . . . a crime" over which this Court could exercise appellate jurisdiction pursuant to Code § 17.1-406(A)(i).

- 9 -

For the foregoing reasons, we transfer this appeal to the Supreme Court, pursuant to Code

§ 8.01-677.1, for further proceedings.[7]

Transferred.

---

[7] Code § 8.01-677.1 provides, in pertinent part:

> [N]o appeal which was otherwise properly and timely filed shall be dismissed for want of jurisdiction solely because it was filed in either the Supreme Court or the Court of Appeals and the appellate court in which it was filed thereafter rules that it should have been filed in the other court. In such event, the appellate court so ruling shall transfer the appeal to the appellate court having appropriate jurisdiction for further proceedings in accordance with the rules of the latter court.

Elder, J., concurring in part, dissenting in part, and dissenting from the order of transfer.

I concur in the majority's recitation of the facts in Part I. I also concur in its conclusion in footnote 6 that the decision in <u>Hertz v. Times-World Corp.</u>, 259 Va. 599, 528 S.E.2d 458 (2000), does not govern our resolution of the jurisdictional issue. However, in light of the Supreme Court's decisions in <u>Commonwealth v. Southerly</u>, 262 Va. 294, 551 S.E.2d 650 (2001), and <u>Green v. Commonwealth</u>, 263 Va. 191, 557 S.E.2d 230 (2002), I would interpret Code § 17.1-406(A)(i) to provide jurisdiction over this appeal lies in the Court of Appeals, unless and until the Supreme Court instructs otherwise. Thus, I respectfully dissent. Because I believe this Court has jurisdiction over the appeal, I would reach appellants' remaining assignments of error, and I would reverse the circuit court's order sealing a portion of the record.[8]

I.

A. JURISDICTION

This Court's appellate jurisdiction in criminal matters is defined by Code § 17.1-406(A), which provides that "[a]ny aggrieved party may present a petition for appeal to the Court of Appeals from . . . any final conviction in a circuit court of a traffic infraction or a crime, except where a sentence of death has been imposed . . . ." As a general rule, the Supreme Court of Virginia has appellate jurisdiction in civil matters. <u>See</u> § 8.01-670. Interpreting Code § 17.1-406(A), the Supreme Court has explained

> it is the nature of the method employed to seek relief from a criminal conviction and the circumstances under which the method is employed that determine whether an appeal is civil or criminal in nature. If the method consists of an appeal from the conviction itself or *from action on motions filed and disposed of while the trial court retains jurisdiction over the case*, the appeal is criminal in nature.

---

[8] In granting the petition for appeal, we directed the parties to address whether appellants preserved all assignments of error included. The Commonwealth states on brief that its "review of the record reflects that all of the present arguments are reviewable under Rule 5A:18." The record supports the Commonwealth's concession regarding preservation.

Southerly, 262 Va. at 299, 551 S.E.2d at 652-53 (emphasis added); see also Green, 263 Va. at 194, 557 S.E.2d at 232. Because the trial court granted appellants' motion to intervene and ruled on their request to obtain access to the exhibits as part of the criminal matter against Callender while it retained jurisdiction, I would hold, contrary to the position taken by the majority, that appellants fall within the broadly worded category of "[a]ny aggrieved part[ies]" authorized by Code § 17.1-406(A) to "present a petition for appeal to the Court of Appeals from . . . any final conviction in a circuit court of . . . a crime." Thus, I would reach the merits of the appeal.

## B. MOOTNESS

Pursuant to the trial court's order, when Callender noted her appeal, the original exhibits were returned to the case file and the sealing order was lifted. Thus, the Commonwealth contends the appeal is now moot. However, the opportunity for appellants to review those exhibits *contemporaneously* with Callender's convictions (and prior to Stoffa's trial) has passed. See Richmond Newspapers, Inc. v. Commonwealth, 222 Va. 574, 584, 281 S.E.2d 915, 920 (1981) ("'The knowledge that every criminal trial is subject to *contemporaneous* review in the forum of public opinion is an effective restraint on possible abuse of judicial power.'" (quoting Gannett Co. v. DePasquale, 443 U.S. 368, 380 (1979)) (emphasis added)). This case, therefore, presents a classic example of an issue "capable of repetition, yet evading review," a well-established exception to mootness doctrine. The United States Supreme Court considered a very similar issue in Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982):

> In this Court, Globe challenges that portion of the trial court's order . . . hold[ing] that [the statute at issue] requires, under all circumstances, the exclusion of the press and general public during the testimony of a minor victim in a sex-offense trial. Because the entire order expired with the completion of the rape trial at which the defendant was acquitted, we must consider at the outset whether a live controversy remains. Under Art. III, § 2, of the Constitution, our jurisdiction extends only to actual cases or controversies. Nebraska Press Assn. v. Stuart, 427 U.S. 539, 546 (1976). "The Court has recognized, however, that jurisdiction is

- 12 -

not necessarily defeated simply because the order attacked has expired, if the underlying dispute between the parties is one 'capable of repetition, yet evading review.'" Ibid., quoting Southern Pacific Terminal Co. v. ICC, 219 U.S., [498,] 515 [(1911)].

. . . . It can reasonably be assumed that Globe, as the publisher of a newspaper serving the Boston metropolitan area, will someday be subjected to another order relying on [the statute's] mandatory closure rule. See [DePasquale, 443 U.S. at 377-78]; Richmond Newspapers, Inc . v. Virginia, 448 U.S., [555,] 563 [(1980)] (plurality opinion). And because criminal trials are typically of "short duration," ibid., such an order will likely "evade review, or at least considered plenary review in this Court." [Stuart], supra, at 547. We therefore conclude that the controversy before us is not moot within the meaning of Art. III . . . .

Id. at 602-03, quoted with approval in Dep't of Tax. v. Delta Air Lines, 257 Va. 419, 427-28, 513 S.E.2d 130, 134 (1999); see Press-Enter. Co. v. Super. Ct., 478 U.S. 1, 6 (1986) [hereinafter Press-Enter. II] (holding refusal to release preliminary hearing transcript not mooted when court released transcript after defendant waived jury trial right); DePasquale, 443 U.S. at 377-78 (suppression hearing transcript).

Although the exhibit-sealing issue in the instant case does not involve a mandatory provision like in Globe Newspaper Co., the trial judge here, noting he was "the Chief Judge for this circuit," stated, "This Court is familiar with many cases in which the Commonwealth has [moved] to withdraw original exhibits until all defendants have been prosecuted, and the Court has frequently granted that motion . . . ." "[T]he Court has often administratively allowed [much of the evidence admitted in the trial of a defendant], upon proper documentation, to be withdrawn" until subsequent prosecutions of related defendants were completed. The trial judge also referred to "secur[ing] the withdrawal of any exhibits by the means *customarily* used." (Emphasis added). These statements readily support the conclusion that the issue here is reasonably likely to recur and to evade review in this Court. Compare Salvatierra v. City of Falls Church, 35 Va. App. 453, 456-57, 546 S.E.2d 214, 215 (2001) (applying doctrine to permit

- 13 -

review where "appellant's commitment to [the Department of Juvenile Justice] was too short to . . . appeal" but "[b]ecause appellant is on parole . . . , he is subject to re-commitment based upon a new offense"), and Commonwealth ex rel. State Water Ctrl. Bd. v. Appalachian Power Co., 12 Va. App. 73, 76, 402 S.E.2d 703, 705 (1991) (en banc) (applying doctrine where appellee agency attempted to moot challenge to validity of permanent regulations by enacting emergency regulations), with Va. Dep't of State Police v. Elliott, 48 Va. App. 551, 553-55, 633 S.E.2d 203, 204-05 (2006) (refusing to apply doctrine where the party whose voluntary actions caused the mootness was the party seeking review).

Thus, I would hold the appeal is not moot.

### C.  CONSTITUTIONALITY OF THE ORDER SEALING THE EVIDENCE

Appellate review of a ruling on a request for closure of a hearing or trial on constitutional grounds is *de novo*, In re The Charlotte Observer, 882 F.2d 850, 854 (4th Cir. 1989), although subsidiary factual issues require deferential review.

The United States Supreme Court's rulings with respect to the public trial right rest upon two different provisions of the Bill of Rights.  The Sixth Amendment "directs, in relevant part, that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.'"  Pressly v. Georgia, 130 S. Ct. 721, 723 (2010).  The United States Supreme Court has also held that "the public trial right extends beyond the accused and can be invoked under the First Amendment."  Id. (citing Press-Enter. Co. v. Super. Ct., 464 U.S. 501 (1984) [hereinafter Press-Enter. I]).  The right of access is a contemporaneous one.  Richmond Newspapers, 222 Va. at 584, 281 S.E.2d at 920.  Even if a closure order causes "'minimal delay' in access to the materials upon which a judicial decision was made," that delay "threaten[s]" "the value of 'openness.'"  Charlotte Observer, 882 F.2d at 856 (quoting Press-Enter. I, 464 U.S. at 508).

The right of the public and press to an open trial may give way to certain other rights, "'such as the defendant's right to a fair trial,'" Pressly, 130 S. Ct. at 724 (quoting Waller v. Georgia, 467 U.S. 39, 45 (1984)), "[t]he protection of victims of sex crimes from the trauma and embarrassment of public scrutiny," Press-Enter. II, 478 U.S. at 9 n.2, or "'the government's interest in inhibiting disclosure of sensitive information,'" Pressly, 130 S. Ct. at 724 (quoting Waller, 467 U.S. at 45). "'*Such circumstances will be rare, however,* and the balance of interests must be struck with special care.'" Id. (emphasis added) (quoting Waller, 467 U.S. at 45).

Before a court may exclude the public from any stage of a criminal trial:

> "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure."

Id. (quoting Waller, 467 U.S. at 48). "[T]he particular interest, and threat to that interest, must 'be articulated along with findings *specific enough* that a reviewing court can determine whether the closure order was properly entered.'" Press-Enter. I, 464 U.S. at 510 (emphasis added). "The First Amendment right of access cannot be overcome by the conclusory assertion that publicity *might* deprive the defendant of [a fair trial]." Press-Enter. II, 478 U.S. at 15 (emphasis added). Also, the court must consider alternatives to closure regardless of whether the party opposing closure offers any such alternatives. Pressly, 130 S. Ct. at 724-25.[9]

Possible alternatives to closing a criminal proceeding for fear of tainting the jury pool may include changing venue, postponing trial, or sequestering the jury. Stuart, 427 U.S. at 563-65; see Shenandoah Pub. House v. Fanning, 235 Va. 253, 259, 368 S.E.2d 253, 256 (1988) (citing Stuart as persuasive authority in a case under Code § 17.1-208, which provides a right of

---

[9] Pressly thus implicitly overrules in part the decision in Richmond Newspapers, 222 Va. at 590, 281 S.E.2d at 924 (stating that "*[t]he intervenors* . . . shall have the burden of showing . . . reasonable alternatives to closure" (emphasis added)).

access to certain judicial records). "Through *voir dire*, cumbersome as it is in some circumstances, a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict." Press-Enter. II, 478 U.S. at 15; see Charlotte Observer, 882 F.2d at 855-56 ("Though in particular cases the threat may be so overwhelming that only more drastic measures are adequate, recent experience in a number of nationally publicized trials of widely publicized individuals serves to validate the efficacy of the *voir dire* for this purpose."); In re Nat'l Broad. Co. (United States v. Myers), 635 F.2d 945, 953 (2d Cir. 1980) (noting in high-profile case that many prospective jurors do not follow news of even highly publicized prosecutions closely), cited with approval in Charlotte Observer, 882 F.2d at 855-56.

This case involves the trial court's sealing of *exhibits* admitted at trial rather than the closing of the trial itself. Virginia's appellate courts have held the same principles that apply to determine whether a constitutional right of access exists to a particular hearing also apply "to determine media access to *documents* that were submitted into evidence therein."[10] In re Times-World Corp., 25 Va. App. 405, 418, 488 S.E.2d 677, 683 (1997) (emphasis added) (citing In re Worrell Enters., 14 Va. App. 671, 676, 419 S.E.2d 271, 274 (1997)), overruled in part on

---

[10] The Commonwealth concedes this point on brief. See also Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 504 (1st Cir. 1989) (holding that "[i]f the press is to fulfill its function of surrogate [for the public], it surely cannot be restricted to report on only those judicial proceedings that it has sufficient personnel to cover contemporaneously"). Indeed, "a general rule for all criminal cases that once the substance of . . . evidence has been exposed to public view, there is no right of access to visual and aural means of preserving it" would preclude meaningful public inspection of the numerous records and documents to which the public did not have realistic access during the proceedings. Id.; ABA Standards for Criminal Justice, Fair Trial and Free Press 8-3.2, at 21 (3d ed. 1992) (articulating a right of public access to all judicial proceedings and related documents and exhibits, based expressly on the First Amendment right of access recognized in the United States Supreme Court's decision in Richmond Newspapers, subject to specific, narrowly defined circumstances that may justify sealing). These principles apply only to documents that have been filed or admitted and do not extend to documents merely produced during discovery. In Re Worrell Enters., 14 Va. App. 671, 676-80, 419 S.E.2d 271, 274-77 (1997), overruled in part on other grounds by Hertz, 259 Va. at 610, 528 S.E.2d at 464.

other grounds by Hertz, 259 Va. at 610, 528 S.E.2d at 464; see Globe Newspaper Co. v. Commonwealth, 264 Va. 622, 628, 570 S.E.2d 809, 812 (2002).

Here, the autopsy report and photos had not yet been offered into evidence in Stoffa's case because no trial had yet occurred, and nothing in this record indicates whether they had been made available to Stoffa's counsel via discovery. Stoffa was not a party to the proceedings against Callender, the matter in which appellants intervened and to which the trial court's sealing order pertained. Nothing in the record indicates Stoffa received formal notice of appellants' motion opposing the sealing, and neither Stoffa nor his attorney was present at the hearing.[11] Assuming without deciding it was nevertheless proper for the trial court to consider Stoffa's interests in his upcoming trial in determining whether to seal the exhibits already admitted in Callender's trial, the trial court's findings failed to meet the stringent requirements for sealing the exhibits. Although the trial court said its ruling applied to this case only, it failed to articulate a rationale that was unique to this case, stating only generally as follows:

> The Court's consideration is the dissemination and publication of information contained in the original exhibits prior to the introduction of those documents by the Commonwealth [in Stoffa's subsequent trial, which the trial court believed was scheduled for the next month] . . . so as to not violate or prejudice or bias the interest of the Commonwealth or a defendant.
>
> [U]ntil those exhibits are properly introduced against another defendant, there are issues regarding discovery [and] admissibility as to their effectiveness against other defendants.
>
> Certainly anyone can get a transcript as to what occurred in the trial . . . [but] [t]he only one that has read these documents [as a result of their admission in Callender's trial] has been the Court.
>
> It doesn't have to do with trying to be secret about [any particular exhibit]. It has to do with preserving the right of the Commonwealth or the defendant until it comes in. It has to do

---

[11] Although the prosecutor said she had spoken to Stoffa's counsel and implied he shared her concerns about release of the autopsy report and photos to the press, her comments on this point were not entirely clear.

with not allowing a member of the public to come in and damage it in any way or destroy or remove it from the file.

The trial court made no specific findings in its written orders.

Thus, the court failed to articulate the required specific findings to establish "an *overriding interest* [existed] that require[d] closure, that closure [was] *essential* to preserving higher values than the presumption of openness," and that "the closure order [was] *narrowly tailored* to serve that interest." In Re Times-World Corp., 7 Va. App. 317, 330, 373 S.E.2d 474, 481 (1988); see In Re Washington Post Co., 807 F.2d 383, 391-92 (1986) (holding court may not "blind[ly] accept[]" claim of "national security concerns").

Other courts have considered the impact, in matters involving multiple defendants not tried together, of providing access to exhibits admitted in one defendant's trial when another defendant remains to be tried. In In re National Broadcasting Co. (United States v. Myers), 635 F.2d at 953, the Court of Appeals for the Second Circuit held the public's right of access to trial exhibits (videotapes) admitted in "the Myers cases" outweighed any "risk to a fair trial of . . . others facing trial on other Abscam indictments."[12] Relying in part on the United States Supreme Court's First Amendment holding in Richmond Newspapers, the Court reasoned:

> [D]espite the extensive publicity about Abscam . . . , about half of those summoned for jury selection had no knowledge of Abscam, and only a handful had more than cursory knowledge. Even the intensive publicity surrounding the events of Watergate, very likely the most widely reported crime of the past decade, did not prevent the selection of jurors without such knowledge of the events as would prevent them from serving impartially.
>
> . . . . We do not believe the public at large must be sanitized as if they all would become jurors in the remaining Abscam trials. The alleged risk to a fair trial for the Abscam defendants yet to be tried is too speculative to justify denial of the public's right to inspect . . . evidence presented in open court.

---

[12] "[T]he so-called Abscam cases" were widely publicized "criminal prosecutions of Members of Congress and other public officials on bribery and related charges arising out of an elaborate F.B.I. undercover 'sting' operation." Nat'l Broad. Co., 635 F.2d at 947.

- 18 -

> If *voir dire* examination should reveal that at a particular time and location there is genuine difficulty assembling an impartial jury, or even that the effort to do so risks unduly narrowing the cross-section from which the trial jury will be selected, trial courts can take additional protective measures through the granting of a continuance or change of venue.

Id. at 953-54 & n.9 (citations omitted) (also approving copying of the evidence), cited with approval in Charlotte Observer, 882 F.2d at 855-56 ("[The magistrate's assessment] gives much too short shrift to the capability of *voir dire* to guard against the potential prejudice of pretrial publicity, including . . . [any] attributable to republications [of exhibits admitted at the hearing on defendants' motion for change of venue] between original dissemination and trial time.").

If *voir dire* was sufficient to avoid any bias problems in the Abscam cases, so too should it have been sufficient in this case to permit appellants to have access to the requested exhibits. Even the prosecutor in the Callender and Stoffa matters conceded that the possibility of tainting the jury pool, in the event Stoffa changed his mind and decided to exercise his right to trial by jury, probably was not enough to justify sealing the exhibits admitted in Callender's trial.

The Commonwealth argues on brief that "it appears . . . appellants intended, not just to examine the exhibits, but to make copies of them for their own use." It contends that the decision in Smith v. Richmond Newspapers, 261 Va. 113, 540 S.E.2d 878 (2001), drew a clear distinction between these rights, "repeatedly emphasiz[ing] that it was addressing only the intervening newspaper's attempt to listen to [certain] tapes, not to obtain copies of them." Thus, the Commonwealth contends Smith provides additional support for the trial court's ruling refusing access. I would conclude this argument is a red herring, as I see nothing in the record clearly indicating appellants sought leave to make copies of these exhibits. The closest appellants come is the request in their motion to "full and unfettered access to the record."

Whether the First Amendment guarantees a right to copy exhibits capable of being duplicated appears to be an open question in Virginia. See Smith, 261 Va. at 118-19 & n.2, 540

S.E.2d at 881-82 & n.2 (upholding public right to "inspect" audiotapes of criminal trial by listening to them but *expressly not addressing* "[t]he release of the audio tapes"); see also Globe Newspaper Co., 264 Va. at 629-30, 570 S.E.2d at 812-13 (rejecting the notion that, in a trial in which DNA test results have been admitted, the First Amendment right of "access" to admitted evidence includes the right to have additional DNA testing performed on the biological sample tested to produce the result already in evidence). Even if appellants sought to duplicate and publish and this Court were to conclude the applicable law did not require it to permit such activity, a more narrowly tailored approach the court should have considered, in lieu of sealing the exhibits, would have been to permit examination without duplication or publication.

The record contains no other basis for the trial court's decision to seal the exhibits in Callender's case which is any stronger than the weak "potential jury bias" argument already evaluated. Although the trial court here did not articulate a basis for sealing specifically tied to the facts of this case, it said generally that "until those exhibits are properly introduced against another defendant, there are issues regarding *discovery*, there are issues regarding *admissibility* as to their effectiveness against other defendants." (Emphasis added). The exhibits at issue here—the autopsy report and related photos of the deceased child—were admitted against Callender, the deceased child's mother, in Callender's bench trial based on allegations she failed to protect the child. Nothing articulated in the record indicates those exhibits would not also have been admissible against Stoffa, whom the Commonwealth contended was the party more directly responsible for the child's death. In addition, Rule 3A:11(ii) expressly permitted Stoffa, "upon written motion," "to inspect and copy or photograph any relevant . . . written reports of autopsies." The record in this case contains no evidence concerning discovery requests defendant Stoffa may or may not have made in his related case. However, even assuming Stoffa failed to request the autopsy report in a timely fashion, any tactical desire of the Commonwealth

to prevent Stoffa from obtaining, via the record in Callender's trial, an autopsy report he failed to request in his own case would not provide a sufficiently compelling justification under the First Amendment for the trial court's refusing to make the exhibits from Callender's trial public.

The trial court noted a legitimate concern about preserving the physical integrity of the exhibits so as to "not allow[] a member of the public to come in and damage [an exhibit] in any way or destroy it or remove it from the file." Counsel for appellants argued a narrowly tailored method of addressing this concern would be to require the parties to substitute photocopies for any exhibits removed from the file. The trial court directed the parties to follow this procedure of submitting photocopies for the withdrawn exhibits but then sealed the photocopies, clearly not the narrowest method of protecting the physical integrity of the evidence.[13] Cf. Nixon v. Warner Commc'ns, 435 U.S. 589, 609 (1978) (in applying "the common-law right of access to judicial records," upholding restriction on access to audiotapes admitted into evidence which prevented "*physical* access" to the tapes but permitted the press "to listen to the tapes" and have ongoing access to transcripts of the tapes).

Thus, I would hold the trial court's sealing of the exhibits at issue was unconstitutional.

### D. LEGALITY OF THE ORDER UNDER CODE § 17.1-208

Code § 17.1-208 provides in relevant part:

> Except as otherwise provided by law, any records and papers of every circuit court that are maintained by the clerk of the circuit court shall be open to inspection by any person and the clerk shall, when requested, furnish copies thereof, except in cases in which it is otherwise specially provided.

This statutory language, which "has endured for more than a century," was "intended to recognize the generally accepted common-law rule of openness and to declare [the legislature's]

---

[13] In sealing the photocopies, the court noted the risk of possible damage to the actual exhibits was "rare" and was "not the Court's only consideration."

power to make statutory exceptions to the rule." Fanning, 235 Va. at 258, 368 S.E.2d at 255.

This code section is "broad," "makes no distinction between criminal and civil proceedings," and

provides a rebuttable presumption of public access . . . to judicial records" including duly filed

trial exhibits. Id. at 257-58, 368 S.E.2d at 255; see Worrell Enters., 14 Va. App. at 680, 419

S.E.2d at 277 (noting, in contrast, that no common-law right of access exists to *discovery*

documents). "[T]o overcome the presumption, the moving party . . . bear[s] the burden of

establishing an interest so compelling that it cannot be protected reasonably by some measure

other than a protective order, and . . . any such order must be drafted in the manner least

restrictive of the public's interest." Fanning, 235 Va. at 258-59, 368 S.E.2d at 256 (relying on

federal and state cases involving the constitutional issue). The statute, like the constitutional

standard, requires "specific factual findings . . . to support a decision to restrict public access to

court records." Perreault Adm'x v. The Free Lance Star, 276 Va. 375, 390, 666 S.E.2d 352, 360

(2008). "[T]he decision whether to seal the record rests within the sound discretion of the circuit

court." Id. at 389, 666 S.E.2d at 359-60. Thus, the statutory issue requires an analysis similar to

the constitutional analysis but is reviewed under an abuse of discretion standard.

The record establishes that under the statute, like under the Constitution, the trial court

abused its discretion both in refusing the requested inspection and in failing to make the specific

findings required to support that refusal, including an evaluation of less restrictive alternatives.[14]

II.

In sum, I respectfully dissent from the ruling transferring the appeal. Thus, I would reach

the merits of the appeal and conclude that the trial court, by sealing the exhibits without making

specific findings which support that action or considering less restrictive alternatives, violated

both the Constitution and Code § 17.1-208.

---

[14] Code § 17.1-208 expressly permits the court to deny a request for copies of the records.