UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Beales and Lorish
Argued at Richmond, Virginia


JOHN HALVORSEN, ET AL.

v.        Record No. 0904-23-2

POWHATAN COUNTY SCHOOL BOARD          MEMORANDUM OPINION* BY
                                      JUDGE LISA M. LORISH
JOHN HALVORSEN, ET AL.                JULY 23, 2024

v.        Record No. 1039-23-2

POWHATAN COUNTY SCHOOL BOARD


FROM THE CIRCUIT COURT OF POWHATAN COUNTY
Paul W. Cella, Judge

Janipher W. Robinson (Robinson and Greene, on brief), for
appellants.

Matthew D. Green (LaRana J. Owens; Patrick T. Andriano; Aaisha
M. Sanaullah; Sands Anderson PC, on brief), for appellee.


John and Kathy Halvorsen filed a petition for a writ of mandamus in the Circuit Court of

Powhatan County directed to the Powhatan County School Board.[1]  They asked the circuit court to

order the School Board to pay for their autistic son's private school tuition, consistent with its

obligation to provide disabled students a "free and appropriate public education" (FAPE) under the

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Initially, the petition was directed to Powhatan County Public Schools (PCPS) and to
Dr. Beth Teigen, the School Board's superintendent.  The Halvorsens moved to dismiss
Dr. Teigen as a defendant, and the Powhatan County School Board filed responsive pleadings "in
which it . . . stated that the School Board, rather than PCPS, is the correct name for the school
system as a defendant."  Thus, the circuit court "assume[d]" that only the School Board was the
"correct defendant" when ruling.

Individuals with Disabilities Education Improvement Act (IDEA). *See* 20 U.S.C. § 1400. The circuit court concluded that the writ did not lie because the Halvorsens had an adequate remedy at law. The Halvorsens challenge both the court's initial ruling and its denial of their motion to reconsider.[2] We agree that the Halvorsens had an adequate remedy at law and so we affirm.

BACKGROUND

The IDEA guarantees that children with disabilities have access to a FAPE "that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). To achieve this goal, schools and parents collaborate to craft an individual education program (IEP), a written statement that includes, among other details, a child's present levels of academic achievement, measurable annual goals for the child's academic achievement, and the services to be provided to the child. 20 U.S.C. § 1414(d)(1)(A); *see also* 20 U.S.C. § 1414(d)(1)(B) (prescribing that the IEP is developed by the child's "IEP Team," which is composed of the parents of the child with the disability, teachers, and a representative of the local educational agency); *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 391 (2017) (observing that a child's teachers and parents must work together "as the child's 'IEP Team'").

An IEP "is the centerpiece of the statute's education delivery system." *Endrew F.*, 580 U.S. at 391. Under federal and Virginia law, parental consent is required before special education services can begin or before an IEP is changed. 34 C.F.R. §§ 300.300(b), 300.321(e)(2), 300.154(e)(1)-(2), 303.420(a), 303.520(b)(1)(i); 8 Va. Admin. Code § 20-81-170(E)(1)(c)-(d). Disputes between parents and "educational agencies" are resolved by hearing officers in the Virginia Department of Education's (VDOE) "special education due process hearing system." 8

---

[2] The Halvorsens filed two notices of appeal challenging the circuit court's orders, resulting in two record numbers on appeal. We consolidated the appeals for briefing and argument.

Va. Admin. Code § 20-81-210(A); Code § 22.1-214(B). A hearing officer's decision "is final and binding unless" appealed to a state circuit court within 180 days, or a federal district court within 90 days. 8 Va. Admin. Code § 20-81-210(T)(1); Code § 22.1-214(D).

When the IEP team proposes a placement at a private school, the tuition is paid from funds allocated under the Children's Services Act (CSA). Code §§ 2.2-5200, 2.2-5211(B); 8 Va. Admin. Code § 20-81-250(F)(1). To obtain CSA funding, a child's parents must sign a "CSA consent form," which permits the "community policy and management team"[3] (CPMT) to assess the child's eligibility and ensure the funds are being used in appropriate facilities. Code §§ 2.2-5211.1, 2.2-5212(A). Signing the form also permits the child's school administrators to "release information about the child to relevant agencies, teams, or entities." Thus, "[t]o approve" private day school "funding, the CSA must receive a signed CSA consent form from the parents."

The Halvorsens' son, A.H., is an elementary school student who has been diagnosed with autism spectrum disorder and is eligible for special education and related services. In November 2021, his IEP team proposed that his "placement" be amended "from public day school to private day school" due to "the severity of [his] disability." Despite orally requesting the change, the Halvorsens did not provide clear written consent to the IEP amendment. The parties brought the matter to a VDOE hearing officer, who confirmed that the Halvorsens had not consented to the change in writing and ordered A.H.'s "placement in a private day school" because of his "acts of aggression."

The Halvorsens requested the School Board's help in enrolling A.H. in Believe in You Academy (BNU) for the 2022-2023 school year. Yet the Halvorsens explicitly withheld consent to allow CSA to begin an assessment of the child's needs. After BNU "conditionally accepted" A.H.

---

[3] The CPMT is "the fiscal agent for CSA Pool Funds." It reviews "budget requests to fund" a private day school placement.

pending "a CSA contract," a Powhatan Assistant Superintendent informed the Halvorsens that "CSA was an entity of the county, not the [School Board,] and that a signed CSA consent form was necessary so that information could be released or exchanged between the [School Board] and CSA."

When the Halvorsens did not respond, the Assistant Superintendent asked CSA to approve A.H.'s funding at BNU. CSA denied funding, noting that without a consent form, the assessment "could not be completed" and "information could not be shared between the referring agency, the CSA office, CPMT . . . and others." The Halvorsens then provided a consent form that "restricted the release of [certain] confidential information." CSA again denied funding, finding the consent insufficient. CSA presented the Halvorsens with an edited consent form that no longer required the parent to consent to the disclosure of certain information, but they refused to sign it because they believed that it remained "too broad."

The Halvorsens petitioned for a due process hearing with the VDOE, arguing that the School Board had failed to "timely implement" A.H.'s private day school placement, thereby denying him a FAPE. They contended that even without sufficient consent to enable CSA funding, the School Board remained legally "responsible for paying for the assignment and should not delay implementation" of the child's assignment to BNU. The hearing officer determined that the Halvorsens had not provided sufficient consent despite the School Board and CSA's diligent and reasonable efforts to address their concerns. Thus, she rejected their argument that the School Board had to pay A.H.'s tuition for BNU. The hearing officer issued her final decision on September 11, 2022 and notified the Halvorsens of their right to appeal to the circuit court or a federal district court.

On October 31, 2022, the Halvorsens filed a petition for a writ of mandamus in the circuit court directed to the School Board. The petition alleged that the School Board had agreed to an IEP

that permitted A.H. to enroll at BNU for the 2022-2023 school year. The petition also alleged that BNU permitted A.H. to enroll without an initial tuition payment and invoiced the School Board and that the School Board refused to pay the invoices because "there was no agreement between [it] and BNU . . . to pay [A.H.'s] tuition." The petition acknowledged that the Halvorsens had "refused to give CSA their consent to allow CSA to pay BNU's tuition because there was a requirement that they had to include their personal and financial information." The petition also alleged that when CSA denied the request for funding, it stated that "the school system [was] responsible for" providing a FAPE to A.H. The Halvorsens asserted that because CSA refused to provide funding, they had a "clear legal right" to demand that the School Board pay A.H.'s tuition, and the School Board had a "ministerial duty" to do so.

The School Board demurred and moved to dismiss, arguing that the Halvorsens did not have a clear and specific legal right to the relief they sought. It also argued that the Halvorsens had an adequate remedy at law through an appeal of the hearing officer's decision under the IDEA. The School Board also filed a motion craving oyer to make the hearing officer's opinions part of the record.

After a hearing, the circuit court granted the motion craving oyer and dismissed the petition for a writ of mandamus. The court declined to address whether the Halvorsens had a "clear legal right" for the School Board to pay A.H.'s tuition. Instead, it held that the Halvorsens had an adequate legal remedy at law because the hearing officer considered and rejected their argument on that issue, and they could appeal that adverse judgment.

The Halvorsens moved the circuit court to reconsider its judgment. They argued that the question before the circuit court was "who would pay for the private placement." In contrast, a hearing officer could determine only whether A.H. was entitled to private placement. They also cited certain "new evidence" they wished the court to consider. Before the circuit court rendered a

judgment on the motion, the Halvorsens noted their first appeal. The circuit court then denied the motion to reconsider, and the Halvorsens filed a second notice of appeal.

On appeal, the Halvorsens argue that the School Board must provide A.H. a FAPE. Citing no authority, they contend that they did not have an adequate remedy at law because the VDOE hearing officer "does not have the power to decide who pays the tuition for private placement but only whether the Child is entitled to private placement." They insist, again without citation to any authority, that "a Virginia court of record" must decide "who had the responsibility to pay." They conclude that they have "a legal right to the mandamus relief sought."

ANALYSIS

"Mandamus is an extraordinary remedy that may be used 'to compel performance of a purely ministerial duty, but it does not lie to compel the performance of a discretionary duty.'" *Moreau v. Fuller*, 276 Va. 127, 135 (2008) (quoting *Ancient Art Tattoo Studio v. City of Va. Beach*, 263 Va. 593, 597 (2002)). "The use of the remedy is limited. It is not awarded as a matter of right but only in the exercise of a sound judicial discretion. It is not awarded in a doubtful case." *Umstattd v. Centex Homes*, 274 Va. 541, 545 (2007). "A writ of mandamus may be issued only when there is a clear right to the relief sought, a legal duty to perform the requested act, *and* no adequate remedy at law." *Ancient Art Tattoo Studio*, 263 Va. at 597 (emphasis added).

"The requirement that a litigant who seeks the issuance of a writ of mandamus must have no adequate remedy at law is deeply imbedded in the jurisprudence of this Commonwealth." *Hertz v. Times-World Corp.*, 259 Va. 599, 608 (2000). "[O]ne of the fundamental principles underlying the entire jurisdiction is that mandamus never lies where the party aggrieved has another adequate remedy at law, by action or otherwise." *Id.* Thus, the Supreme Court has instructed that mandamus should not be "used as a substitute for an appeal" of an adverse

judgment.  *Richlands Med. Ass'n v. Commonwealth, ex rel. State Health Comm'r.*, 230 Va. 384, 387 (1985).  "Mandamus 'lies to compel, not to revise or correct action, however erroneous it may have been, and it is not like a writ of error or appeal, [which is] a remedy for erroneous decisions.'"  *Id.* (alteration in original) (quoting *Bd. of Supervisors v. Combs*, 160 Va. 487, 498 (1933)).  Thus, a petitioner may not use mandamus to secure "a judicial review of" an adjudicated "administrative proceeding."  *Id*. at 388.

Virginia law provides a well-defined framework for adjudicating a parent's claim that a school system is not providing a FAPE under IDEA.  If a dispute arises between a parent and school administrators regarding the student's "program placements, individualized education programs, *tuition eligibility* [or] other matters as defined in state or federal statutes or regulations," the parent may seek a "due process" hearing before VDOE.  Code § 22.1-214(B) (emphasis added); *see also* 8 Va. Admin. Code § 20-81-210(A) (providing for "an impartial special education due process hearing system to resolve disputes between parents and [LEAs] with respect to . . . educational placement and services . . . and provision of a [FAPE]").  The parent has the right to counsel and may present testimony or other evidence during that hearing.  Code § 22.1-214(B)-(C).  If a hearing officer determines that a school division has failed to provide a disabled child a FAPE, the Board of Education "may withhold all special education moneys from the school division and may use" that money "to provide special education, directly or by contract, to eligible children with disabilities."  Code § 22.1-214(E).

The Halvorsens exercised their right to a due process hearing and argued that the School Board had denied A.H. a FAPE.  They insisted that the School Board was financially responsible under governing state and federal law for A.H.'s private placement notwithstanding CSA's refusal to pay his tuition due to insufficient parental consent.  If the hearing officer had found that the School Board had denied A.H. a FAPE, it could have withheld "special education

moneys" from Powhatan County and used the money to pay for A.H.'s tuition. Code § 22.1-214(E). But the hearing officer found that the School Board had not denied A.H. a FAPE. Instead, the Halvorsens had caused the problem underlying this litigation by refusing to sign the required CSA consent forms despite the School Board's diligent and reasonable efforts. Thus, the hearing officer rejected their argument that the School Board was required to pay for A.H.'s tuition given CSA's decision not to do so.

The Halvorsens had a legal right to appeal this decision to a federal district court within 90 days, or to the circuit court within 180 days of the hearing officer's decision. Code § 22.1-214(D); 8 Va. Admin. Code § 20-81-210(T)(1). In fact, when they filed their petition for a writ of mandamus on October 31, 2022, neither of those deadlines had passed.[4] Thus, the record demonstrates that the Halvorsens had an adequate alternative legal remedy to address the issues for which they sought relief in their petition for a writ of mandamus—both through the administrative due process procedure and by an appeal of the hearing officer's decision. The Halvorsens argue that this case is about which entity pays for A.H.'s placement in a private school and that a hearing officer is not authorized to decide who pays and only has the power to determine the child's entitlement to private placement. But the Code and the Regulations governing the IDEA authorize hearing officers to resolve disputes relating to "educational placement and services," "the provision of a [FAPE]," 8 Va. Admin. Code § 20-81-210(A)(3)-(4), and "tuition eligibility," Code § 22.1-214(B), which would encompass determinations about

_____

[4] Even if the deadlines had expired, the fact that the Halvorsens had the opportunity to appeal (even if they did not avail themselves of it) constitutes a legal remedy that forecloses a writ of mandamus. *Richlands*, 230 Va. at 387; *Hertz*, 259 Va. at 609-10 (vacating writ where newspapers were required to move to intervene and, had they done so, "would have been required to appeal any adverse order"); *Morrissette v. McGinniss*, 246 Va. 378, 382 (1993) (explaining that appellant "should have taken prompt action immediately after the public hearing to seek judicial review of" the "allegedly erroneous action of the Registrar and the County Board" instead of seeking mandamus relief).

which entity must pay for the provision of education by a private entity. Thus, they may not seek "by way of mandamus a judicial review of" an "administrative proceeding" that resulted in an adverse judgment. *Richlands*, 230 Va. at 388. Accordingly, the circuit court properly concluded that the writ does not lie.

## CONCLUSION

Mandamus is an extraordinary remedy that is unavailable to the Halvorsens because they had an adequate alternative legal remedy. Thus, we affirm the circuit court's judgment.

*Affirmed.*